# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
| | : | |
| **ERIC GUNDRUM and MICHAEL KING,** | : | **Civil Action No.: 3:16-cv-00369-WMC** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | **Collective Action Pursuant to 29 U.S.C. §** |
| **Plaintiffs,** | : | **216(b)** |
| | : | |
| **v.** | : | |
| | : | **Jury Trial Demanded** |
| **CLEVELAND INTEGRITY SERVICES,** | : | |
| **INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
## EXPEDITED MOTION FOR CONDITIONAL CERTIFICATION
## <u>AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)</u>

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 3

     A.   This Court Applies A Two-Step Approach To Conditional Certification............. 3

     B.   CIS Confirms Plaintiffs' Allegations Of A Common Pay Scheme, Which Satisfy The Lenient Standard For Conditional Certification............................................... 6

     C.   CIS' Affirmative Defenses Do Not Preclude Conditional Certification ............... 7

          1.   CIS' Arguments Regarding Its Affirmative Defenses Are Merits Based Inquiries Not Considered At This Stage ...................................................... 7

          2.   Inspectors Are Similarly Situated With Respect To CIS' Affirmative Defenses In That They Were Not Paid On A Salary Basis......................... 9

          3.   Plaintiffs Have Established That Inspectors Perform Substantially Similar Job Duties, Work Under Similar Working Conditions, And Are Subject To The Same Reporting Structure.................................................................. 11

          4.   Misclassification Cases Are Appropriate For Conditional Certification.. 14

     D.   CIS' Illegal Arbitration Agreement Is Not A Bar To Conditional Certification.. 17

     E.   Plaintiffs' Proposed Notice Plan Is Necessary And Appropriate To Effectuate Timely And Accurate Notice ................................................................................ 20

          1.   Plaintiffs' Proposed Notice Plan Is Proper ............................................... 20

          2.   CIS Should Not Be Allowed To Further Delay Notice Being Sent In This Action........................................................................................................ 22

          3.   Potential Opt-In Plaintiffs Will Not Be Liable For Court Costs............... 23

III.  CONCLUSION.......................................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Austin v. CUNA Mut. Ins. Soc'y*,
    232 F.R.D. 601 (W.D. Wis. 2006) .................................................................. *passim*

*Berndt v. Cleary Bldg. Corp.*,
    No. 11-cv-791-WMC, 2013 WL 3287599 (W.D. Wis. Jan. 25, 2013) ......................... *passim*

*Betancourt v. Maxim Healthcare Services, Inc .,*
    10-cv-4763, 2011 WL 1548964 .................................................................. 12, 14

*Bitner v. Wyndham Vacation Resorts, Inc.*,
    301 F.R.D. 354 (W.D. Wis. 2014) .................................................................. *passim*

*Bland v. PNC Bank*,
    No. 15-cv-1042, 2015 WL 7587365 (W.D. Pa. Nov. 25, 2015) ........................................... 24

*Boltinghouse v. Abbott Labs.*,
    No. 15 CV 6223, 2016 WL 3940096 (N.D. Ill. July 20, 2016) ............................................. 23

*Bouder v. Prudential Fin., Inc.*,
    No. 06-cv-4359 (DMC), 2008 WL 7898281 (D.N.J. Mar. 27, 2008) .................................... 15

*Boudreaux v. Schlumberger Tech. Corp.*,
    No. CIV. 6:14-2267, 2015 WL 796602 (W.D. La. Feb. 25, 2015) ....................................... 15

*Brock v. On Shore Quality Control Specialists, Inc.*,
    No. 84-CA-603, 1987 WL 31308 (W.D. Tex. Sept. 29, 1987) ................................................ 8

*Casarotto v. Expl. Drilling, Inc.*,
    No. 15-cv-41, 2015 WL 6080755 (D. Mont. Oct. 15, 2015), *report and recommendation
    adopted*, 2015 WL 8780050 (D. Mont. Dec. 15, 2015) ....................................................... 14

*Comer v. Wal-Mart Stores, Inc.*,
    454 F.3d 544 (6th Cir. 2006) ............................................................................................ 5

*Craig v. Rite Aid Corp.*,
    No. 08-cv-2317, 2009 WL 4723286 (M.D. Pa. Dec. 9, 2009) ............................................. 15

*Cunningham v. Faerber's Bee Window, Inc., 1:04cv500-LJM-VSS*,
    No. 2005 WL 1123634 (S.D. Ind. Apr. 19, 2005) .................................................................. 10

*Dailey v. Groupon, Inc.*,
    No. 11 C 05685, 2014 WL 4379232 (N.D. Ill. Aug. 27, 2014) ............................................. 16

*Delpin Aponte v. United States*,
    83 Fed. Cl. 80 (2008) ........................................................................................................... 4

*Dewan v. M-I L.L.C.*,
    201 WL 695717 (S.D. Tex. Feb. 22 2016) ........................................................... 8

*Dufrene v. Browning-Ferris, Inc.*,
    207 F.3d 264 (5th Cir. 2000) ............................................................................ 10

*Dunkel v. Warrior Energy Servs.*,
    304 F.R.D. 193 (W.D. Pa. 2014) ....................................................................... 24

*Espenscheid v. DirectSat USA, L.L.C.*,
    705 F.3d 770 (7th Cir. 2013) ............................................................................. 4

*Fenley v. Wood Grp. Mustang, Inc.*,
    -- F. Supp. 3d --, 2016 WL 1059681, at *4 (S.D. Ohio Mar. 17, 2016) .................... 2, 12, 14

*Forney v. TTX Co.*,
    No. CIV.A. 05 C 6257, 2006 WL 1030194 (N.D. Ill. Apr. 17, 2006) ................... 16

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*,
    No. 11–cv–592–wmc, 2013 WL 3287634 (Mar. 21, 2013) ........................................... *passim*

*Gaffers v. Kelly Servs. Inc.*,
    No. 16-cv-10128, -- F. Supp. 3d. --, 2016 WL 4445428 (E.D. Mich. Aug. 24, 2016).. 3, 13, 18

*Genesis Healthcare Corp. v. Symczyk*,
    ___ U.S. ___, 133 S. Ct. 1523 (2013) .................................................................. 18

*Goodman v. Burlington Coat Factory*,
    No. 11-cv-4395, 2012 WL 5944000 (D.N.J. Nov. 20, 2012) ............................... 15

*Hoffmann-La Roche v. Sperling*,
    493 U.S. 165 (1989) ........................................................................................... 4

*Jirak v. Abbott Labs.*,
    566 F. Supp. 2d 845 (N.D. Ill. 2008) ....................................................... 12, 13, 14

*Johnson v. Pink Spot Vapors, Inc.*,
    No. 2:14-cv-01960, 2015 WL 1413614 (D. Nev. Mar. 27, 2015) ......................... 22

*Jones v. All. Inspection Mgmt., L.L.C.*,
    No. 13-cv-1662, 2014 WL 1653112 (W.D. Pa. Apr. 24, 2014) ............................ 15

*Kelly v. Bluegreen Corp.*,
    256 F.R.D. 626 (W.D. Wis. 2009) ..................................................................... 10

*Lapan v. Dick's Sporting Goods, Inc.*,
    No. 13-cv-11390, 2014 WL 4206212 (D. Mass. Aug. 20, 2014) ......................... 15

*Lewis v. Epic Sys. Corp.*,
    823 F.3d 1147 (7th Cir. 2016) ..................................................................... 17, 19

*Lewis v. Wells Fargo & Co.*,
669 F. Supp. 2d 1124 (N.D. Cal. 2009) ............................................................... 21

*McPherson v. LEAM Drilling Sys., L.L.C.*,
No. 4:14-cv-02361, 2015 WL 1470554 (S.D. Tex. Mar. 30, 2015) ....................................... 15

*Morgan v. Family Dollar Stores*,
551 F.3d 1233 (11th Cir. 2008) ............................................................................ 5

*Morris v. Ernst & Young, LLP,*
-- F.3d --, 2016 WL 443080 (9th Cir. Aug. 22, 2016) ........................................................ 17

*Mott v. Driveline Retail Merch., Inc.*,
23 F. Supp. 3d 483 (E.D. Pa. 2014) ....................................................................... 21

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ................................................................................. 5

*O'Dell v. Alyeska Pipeline Serv. Co.*,
856 F.2d 1452 (9th Cir. 1988) .............................................................................. 8

*Olmsted v. Residential Plus Mortgage Corp.*,
No. 08-cv-142, 2008 WL 5157973 (N.D. Ill. Dec. 9, 2008) ................................................... 7

*Perkins v. S. New Eng. Tel. Co.*,
669 F. Supp. 2d 212 (D. Conn. 2009) ..................................................................... 15

*Perry v. Nat'l City Mtge., Inc.*,
No. 05-cv-891, 2007 WL 1810472 (S.D. Ill. June 21, 2007) ................................................. 12

*Pfaahler v. Consultants for Architects, Inc.*,
No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) ................................................... 16

*Ravenell v. Avis Budget Car Rental, L.L.C.*,
No. 08-cv-2113, 2010 WL 2921508 (E.D.N.Y. July 19, 2010) ............................................. 15

*Roberts v. S.B. S. Welding, L.L.C.*,
No. 3:14-cv-3617-B, 2015 WL 8773610 (N.D. Tex. Dec. 15, 2015) .................................... 24

*Ruiz v. Serco, Inc.*,
No. 10-CV-394-BBC, 2011 WL 7138732 (Aug. 5, 2011) ............................................... 15, 16

*Schroeder v. Humana Inc.*,
No. 12-cv-0137, 2012 WL 5931886 (E.D. Wis. Nov. 27, 2012) ..................................... 12, 14

*Smallwood v. Ill. Bell Tel. Co.*,
710 F. Supp. 2d 746 (N.D. Ill. 2010) ................................................................... 12

*Smith v. United States*,
No. 13-161C, 2014 WL 3940494 (Fed. Cl. Aug. 11, 2014)...................................................... 5

*Steger v. Life Time Fitness, Inc.*,

No. 14-cv-6056, 2016 WL 245899 (N.D. Ill. Jan. 21, 2016) ................................................ 16

*Strait v. Belcan Eng'g Group, Inc.*,
911 F. Supp. 2d 709 (N.D. Ill. 2012) ................................................................................... 16

*Symczyk v. Genesis Healthcare Corp.*,
656 F.3d 189 (3d Cir. 2011) ................................................................................................. 5

*Thiessen v. GE Capital Corp.*,
267 F.3d 1095 (10th Cir. 2001) ........................................................................................... 5

*Wedel v. Gyro Techs., Inc.*,
No. 2:15-cv-93, 2015 WL 5918216 (S.D. Tex. Sept. 2, 2015), *report and recommendation adopted sub nom.*, *Wedel v. Vaughn Energy Servs., LLC*, No. 2:15-CV-93, 2015 WL 5920034 (S.D. Tex. Oct. 9, 2015) ..................................................................................................... 15

*Wellman v. Grand Isle Shipyard, Inc.*,
No. 14-831, 2015 WL 2169786 (E.D. La. May 8, 2015) ....................................................... 9

*Witteman v. Wis. Bell, Inc.*,
No. 09-CV-440-VIS, 2010 WL 446033 (W.D. Wis. Feb. 2, 2010) ....................................... 13

*Woods v. Club Cabaret, Inc.*,
140 F. Supp. 3d 775 (C.D. Ill. 2015) ............................................................................... 7, 21

*Zannikos v. Oil Inspections, Inc.*,
605 F. App'x 349 (5th Cir. 2015) ......................................................................................... 8

*Zubair v. Entech Eng'g P.C.*,
808 F. Supp. 2d 592 (S.D.N.Y. 2011) ................................................................................... 8

**Statutes And Other Authorities**

29 U.S.C. §§ 201, *et seq* ("FLSA") ................................................................................. *passim*

29 C.F.R. § 541.100*, et seq*.................................................................................................. 9

29 C.F.R. § 778.112 ............................................................................................................. 6

29 C.F.R. § 778.541(d) ......................................................................................................... 6

## I.  <u>INTRODUCTION</u>

The relevant question on Plaintiffs' Eric Gundrum and Michael King ("Plaintiffs") Expedited Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) ("Notice Motion") is whether Plaintiffs have made a modest factual showing that they and the other Inspectors are victims of a common policy or plan that violated the law.  *See* Notice Mot. at 1.  The answer is yes.

In its continued effort to delay conditional certification of this action, Defendant Cleveland Integrity Services, Inc. ("Defendant" or "CIS") spends almost four pages of its Opposition requesting that this Court deviate from the well-established two-step conditional certification process that it has previously followed, instead suggesting that the Court conduct a more rigorous Rule 23 type analysis – a process that would take at least several more months to complete because of the need to create the "developed record" proposed by CIS.  *See* Def.'s Opp. at 5-8.  CIS's proposal is not supported by Seventh Circuit case law and is not consistent with the purpose of sending out notice to potential opt-in plaintiffs at an early stage so they can take steps to preserve their Fair Labor Standards Act claims before they expire.  This Court has already rejected a similar proposal and should not entertain this argument here.  *See, e.g.*, *Fosbinder–Bittorf v. SSM Health Care of Wis., Inc.,* No. 11–cv–592–wmc, 2013 WL 3287634, at *4 (W.D. Wis. Mar. 21, 2013) (Conley, J.).

Most importantly to the Court's consideration of the instant motion is footnote 2 of CIS' opposition brief, in which CIS ***admits*** that Plaintiffs and the Inspectors are all paid pursuant to a similar compensation policy (even if it incorrectly argues that the policy complies with the law). *See* Def.'s Opp. at 9 n.2 (ECF No. 37) ("Messrs. Gundrum and King (***and their proposed collective***) are compensated by a day rate....") (citing Frye Decl. ¶ 6 (ECF No. 38)) (emphasis added)).  Thus, the primary legal issue for the Court to decide, which can be resolved uniformly for Plaintiffs and the Inspectors, is whether CIS's common pay policy violates the FLSA.  CIS

1

does not challenge that all Inspectors were paid pursuant to a "common pay policy", regardless of their geographic location, client, or project.

Instead, CIS tries to reshape this action into a pure misclassification case, arguing that the proposed FLSA Collective is "grandiose" and unmanageable.  Def.'s Opp. at 16.  CIS is wrong both factually and legally, and in an almost identical action, the United States District Court for the Southern District of Ohio recently conditionally certified a nationwide collective of inspectors. *See Fenley v. Wood Grp. Mustang, Inc.*, -- F. Supp. 3d --, 2016 WL 1059681, at *4 (S.D. Ohio Mar. 17, 2016) (conditionally certifying a nationwide collective of over 700 inspectors, who held almost 40 different inspector job titles).

Additionally, CIS's exemption argument is an improper merits-based argument that should not be considered at the conditional certification stage.  *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014) (Conely, J.) ("This standard is 'fairly lenient'; it does not involve adjudicating the merits of the claims, nor does it entail the kind of rigorous analysis typical of class certification under Fed. R. Civ. P. 23.") (citing *Fosbinder–Bittorf*, 2013 WL 3287634, at *4).  To the extent that CIS's exemption defense is considered at this stage, the merits of CIS's exemption defense can be resolved on behalf of all Inspectors without any consideration of their job duties and day-to-day activities, because CIS admittedly paid all Inspectors on a day rate basis and not a salary.  To the extent duties are relevant, Plaintiffs have also submitted evidence that they all performed inspection work, and in their opening brief, have demonstrated that such work is non-exempt.  This is all that is required at this lenient stage, which simply provides a process for collective members to be informed of their right to participate in the action and toll the statute of limitations on their claims.

Finally, CIS asserts that its arbitration agreement should preclude this Court from granting

conditional certification, arguing that "if the Arbitration Agreement is enforced, there is no case for the invitees to join: the litigation shifts entirely to arbitration." Def.'s Mot. at 3. As described at length in Plaintiffs' opening brief and opposition to Motion to Transfer, however, CIS' Arbitration Agreement is illegal and void under Seventh Circuit law. Similar arguments were rejected by the United States District Court for the Eastern District of Michigan in *Gaffers v. Kelly Servs., Inc.*, No. 16-cv-10128, -- F. Supp. 3d. --, 2016 WL 4445428, at \*10-12 (E.D. Mich. Aug. 24, 2016), which denied the defendant's motion to stay and compel arbitration and granted conditional certification of the FLSA action. The same result should be reached here.

At this early stage, Plaintiffs have more than met their lenient burden and have offered sufficient proof of a "factual nexus" between themselves and the potential FLSA Collective to demonstrate that Inspectors are similarly situated for purposes of providing them with notice of this lawsuit and the opportunity to toll the statute of limitations on their FLSA claims. *Bitner*, 301 F.R.D. at 358 ("Essentially, this requires a factual nexus that connects [the named plaintiff] to other potential plaintiffs as victims of an unlawful practice.").

Finally, Plaintiffs' proposed Notice Plan is appropriate and has been approved in multiple courts. For these reasons and as set forth below, this Motion should be granted.

## II.   ARGUMENT

### A.   This Court Applies A Two-Step Approach To Conditional Certification

It well established in the Seventh Circuit that the standard Plaintiffs must meet under the FLSA for conditional certification is fairly lenient and only requires a modest showing that other individuals are similarly situated to the Plaintiffs. *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791-WMC, 2013 WL 3287599, at \*6 (W.D. Wis. Jan. 25, 2013) (Conley, J.); *Bitner*, 301 F.R.D. at 358; *Fosbinder-Bittorf*, 2013 WL 3287634, at \*1, 3. At this early stage, before discovery has been completed, the Court must merely determine whether CIS's employees were "victims of a common

policy or plan that violated the law." *Berndt*, 2013 WL 3287599, at *6. That is "because conditional certification only permits the named plaintiff to notify potential plaintiffs to help them make informed decisions about whether to consent to join the suit, and the statute of limitations for each plaintiff is not tolled until he or she actually consents to do so." *Fosbinder-Bittorf*, 2013 WL 3287634, at *4 (citing *Witteman v. Wis. Bell, Inc.,* 2010 WL 446033, *1 (W.D. Wis. 2010)); *see also Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (holding benefits of a Section 216(b) collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate").

Despite this, in yet another attempt to delay conditional certification of this action, CIS proposes that this Court abandon the relevant precedent and instead adopt a new standard – a one-step, Rule 23 type certification process. Def.'s Opp. at 7-8. In support of its position, CIS misstates two decisions: *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) and *Delpin Aponte v. U.S.*, 83 Fed. Cl. 80, 91-92 (2008).

In *Espenscheid*, the Seventh Circuit reviewed a ***decertification order*** in a hybrid class and collective action, noting that: "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid*, 705 F.3d at 772. Tellingly, CIS has not cited a single case from this District interpreting that statement, made in the context of a motion to decertify an existing collective, to mean that FLSA collective actions should be subject to a one-step, Rule 23 type certification process. Indeed, this Court has interpreted *Espenscheid* to hold that "[t]he 'similarly situated' requirement of the FLSA resembles the commonality and typicality requirements of Rule 23." *Bitner*, 301 F.R.D. at 359 (citing *Espenscheid*, 705 F.3d at 771-72). Even after *Espenscheid*, this Court continues to "decline[] defendant's invitation to

depart from th[e] well-established practice and apply heightened review at the outset" of an FLSA conditional certification inquiry. *Fosbinder-Bittorf*, 2013 WL 3287634, at *4.

CIS next proposes that this Court follow the United States Court of Federal Claims decision in *Delphin*, but "the Rules of the U.S. Court of Federal Claims (RCFC) [] allow exclusively for opt-in class actions, creating no substantive conflict with the FLSA." *Smith v. United States*, No. 13-161C, 2014 WL 3940494, at *2 (Fed. Cl. Aug. 11, 2014) (citing *Delphin*, 83 Fed. Cl at 92 & n.27. This is not the case in the Seventh Circuit, and most Circuits around the country continue to follow a two-step approach in FLSA actions.[1] It is clear that a lenient first stage review is more than appropriate here, where no discovery has been conducted. *Fosbinder-Bittorf*, 2013 WL 3287634, at *4 (applying lenient first stage standard where plaintiff took three months of discovery and had taken one deposition of a designated Rule 30(b)(6) witness).

The Court should decline CIS's invitation to rewrite the law on the two step conditional certification process mandated by the Supreme Court and followed by District and Circuit Courts around the country.

---

[1] *See, e.g.*, *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds,* 133 S. Ct. 1523 (2013) ("In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis."); *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) ("In determining whether to exercise this discretion in an "appropriate case[ ]," the district courts of this Circuit appear to have coalesced around a two-step method…"); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008) ("While not requiring a rigid process for determining similarity, we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase."); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) ("District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded."); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

**B.      CIS Confirms Plaintiffs' Allegations Of A Common Pay Scheme, Which Satisfy The Lenient Standard For Conditional Certification**

In its Opposition, CIS admits that Plaintiffs and the Inspectors are all paid pursuant to an identical pay scheme.  *See* Def.'s Opp. at 9 n.2 ("Messrs. Gundrum and King (and their proposed collective) are compensated by a day rate subject to a weekly guarantee").  Plaintiffs dispute CIS' characterization of its pay plan and contend that its pay plan did not comply with the salary basis test and violated the FLSA.[2]  Just as in the conditionally certified *Fenley v. Wood Group Mustang, Inc.* action, the primary dispute here is whether this common pay scheme violates the FLSA.  But the ultimate merits of the claim is not before the Court at this time.  For now, the Court need only consider whether Plaintiffs and the potential collective members are similarly situated with respect to that plan.  CIS has admitted that they are.

At the conditional certification stage, the "[c]onditional certification analysis does not require the court to make any findings of fact with respect to contradictory evidence presented by the parties nor does the court need to make any credibility determinations with respect to the evidence presented."  *Berndt*, 2013 WL 3287599, at *7 (internal quotation omitted).  In any event, "the court resolves factual disputes in plaintiffs' favor."  *Bitner* 301 F.R.D. at 358; *Berndt*, 2013 WL 3287599, at *7.

CIS is correct that "[t]oday is not the day to decide whether [Plaintiffs] are exempt."  Def's Opp. at 10.  Indeed, at the conditional certification stage, "[w]hat matters [] is whether plaintiffs have presented enough facts to make it *reasonably likely* that, when the representative plaintiff and the defendant debate liability as between themselves, they are effectively deciding that question

---

[2] Plaintiffs allege that CIS's uniform day rate pay policy does not satisfy the salary basis requirement of 29 C.F.R. § 778.541(d), and violates the FLSA's day rate regulation, 29 C.F.R. § 778.112.  *See* Complaint ¶¶ 25-26, 38, 43-47; Notice Motion at 1, 10.  CIS argues that this common day rate pay policy contained the requisite "weekly guarantee [...] that fully meets the salary status component" of the FLSA.  Def.'s Opp. at 9 n.2.

for each and every class member." *Bitner*, 301 F.R.D. at 359 (internal quotation omitted). Plaintiffs have more than satisfied this burden.  CIS admits that its compensation policy is applied equally to all Inspectors, so there can be no dispute that the primary issue of whether CIS's compensation system constitutes a salary is one that can be resolved on a representative basis.

Conditional certification is appropriate here.

**C.      CIS's Affirmative Defenses Do Not Preclude Conditional Certification**

Instead of disputing Plaintiffs' allegation of a common policy causing FLSA violations, CIS's primary argument against conditional certification is that the Court should consider Inspectors' job duties, because Inspectors are allegedly "exempt" from the overtime requirements of the FLSA.   This defense is not supported by the facts or the law, was rejected in the similar *Wood Group Mustang* action, and should not prevent the Court from  conditionally certifying the class of Inspectors for the following reasons.

**1.      CIS's Arguments Regarding Its Affirmative Defenses Are Merits Based Inquiries Not Considered At This Stage**

CIS' affirmative  defenses  should not be considered at the conditional certification stage. *See, e.g.*, *Olmsted v. Residential Plus Mortgage Corp.*, No. 08-cv-142, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008) (declining to review exemption arguments at conditional certification stage, holding arguments regarding whether employees are "exempt from the FLSA are more relevant to determining the ultimate scope, if any, of the collective action during step two" and noting "[t]he application of an FLSA exemption is an affirmative defense on which Defendants will ultimately carry the burden of proof."); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 781 (C.D. Ill. 2015) ("Step two occurs after the conclusion of discovery and the opt-in process is complete. At this step, the court's inquiry is more "stringent" than during step one. With the benefit of discovery, the court examines: 1) whether the plaintiffs share similar or disparate employment

settings; 2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and 3) any fairness and procedural concerns.") (internal citations omitted).

In support of its argument that Plaintiffs and the Inspectors are exempt from the overtime provisions of the FLSA, CIS highlights four cases: *Zannikos*, *Brock*, *Dewan*, and *O'Dell*.  But, none of these cases were decided on conditional certification, none involve the payment of a day rate compensation scheme, and all are distinguishable at the appropriate stage of litigation.  *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed. App'x 349, 359 (5th Cir. 2015) (reviewing decision granting summary judgment in case involving three "marine superintendents" who made more than $100,000 per year and who were paid on a salary basis)[3]; *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1454 (9th Cir. 1988) (reviewing district court's award of overtime and liquidated damages in individual action); *Dewan v. M-I L.L.C.*, 201 WL 695717 (S.D. Tex. Feb. 22, 2016) (summary judgment analysis on individual claims of drilling fluid specialist who was paid on a salary basis); *Brock v. On Shore Quality Control Specialists, Inc.*, No. 84-CA-603, 1987 WL 31308, at *6-7 (W.D. Tex. Sept. 29, 1987) (making post-trial determination regarding inspectors under prior version of the FLSA where plaintiff conceded that all inspectors were paid on a salary basis).[4]

---

[3] In fact, in *Zannikos*, the Fifth Circuit held that marine superintendents at an oil inspection company making less than $100,000 per year did ***not*** fall within the administrative exemption to the FLSA's overtime requirements because they exercised little to no discretion or independent judgment with respect to matters of significance to the company.  *Zannikos*, 605 Fed. App'x at 357-59.

[4] Moreover, CIS does nothing to distinguish the cases that Plaintiffs cited in their Notice Motion, which hold that inspectors are non-exempt as a matter of law.  *See* Notice Motion at 7 (citing *Zuber v. APC Natchiz, Inc.*, 144 F. App'x 657 (9th Cir. 2005) (pipeline safety inspector was non-exempt as a matter of law); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 595 (S.D.N.Y. 2011) (holding chief inspector whose job responsibilities "included testing concrete and paint samples and recommending project improvements to the overall paint systems" was not exempt under the

As Plaintiffs set out in their opening brief, the U.S. Department of Labor regulations and case law make clear that inspectors like the ones at issue in this case are not exempt under the administrative exemption, even when they are not paid on a day rate pay plan that violates the salary basis test of the FLSA.  *See* Notice Motion at 8-11. An inquiry into the merits of CIS's affirmative defenses is inappropriate at this stage of the litigation.

### 2.  Inspectors Are Similarly Situated With Respect To CIS's Affirmative Defenses In That They Were Not Paid On A Salary Basis

CIS's arguments are based on the mistaken premise that this Court must consider Inspectors' job duties when the threshold issue involves the unlawful implementation of CIS's common day rate policy.  CIS spends little more than a footnote even addressing the day rate, and in that footnote, CIS admits that its Inspectors were all paid pursuant to the same compensation policy.  *See* Def.'s Opp. at 9 n.2. Even if CIS's affirmative defenses were relevant at this stage, its focus on the duties prong of the FLSA exemptions is a red herring, because CIS cannot demonstrate that Inspectors are paid on a salary basis – a prerequisite to each exemption.[5]

The declarations that Plaintiffs cited in their Notice Motion and the opt-in consent forms from the five (5) Opt-In Plaintiffs filed to date, all confirm that Inspectors were all paid on a day

---

highly compensated employee exemption to the FLSA)).  At the appropriate stage of litigation, it will become clear that CIS cannot meet its heavy burden of proving that Plaintiffs and the Inspectors are exempt.

[5] In order to qualify for the administrative, executive or highly compensated exemptions, CIS must demonstrate that it intended to and did pay Inspectors on a salary basis.  *See* 29 C.F.R. § 541.602(a) (salary basis: "[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."); § 541.100 (executive exemption requires compensation "on a salary basis at a rate of not less than $455 per week"); § 541.200 (administrative exemption requires compensation "on a salary or fee basis at a rate of not less than $455 per week"); § 541.601 (highly-compensated employee exemption requires that total annual compensation must "include at least $455 per week paid on a salary or fee basis"); *see also Wellman v. Grand Isle Shipyard, Inc.*, No. 14-831, 2015 WL 2169786, *2-3 (E.D. La. May 8, 2015) (denying employer's summary judgment motion on the highly compensated exemption where the employer had not demonstrated that employees were paid on a salary basis).

rate basis.[6]  *See* Plaintiffs and Opt-In Plaintiffs' Declarations (Exs. G-L to Notice Motion); Opt-In Consent Forms filed at ECF Nos. 1-1, 1-2, 2-1, 4-1.  Inspectors' duties, however, are not relevant at this stage or at any other stage because CIS will not be able to meet its burden of demonstrating that the salary basis prong has been met.[7]

Plaintiffs have demonstrated that all Inspectors suffered from a single FLSA-violating policy -- CIS's day rate compensation scheme -- and CIS does not once deny the same.  Thus, Plaintiffs and all potential Opt-In Plaintiffs are unified by their common theory of CIS's statutory violations.  *See Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009) ("[A]t this early stage it is enough for plaintiffs to make only a modest factual showing sufficient to demonstrate that they and potential plaintiffs together *were victims of a common policy or plan that violated the law.*") (emphasis in original, internal citation omitted); *Bitner*, 301 F.R.D. at 358 (same).

Plaintiffs' evidence demonstrates – and CIS admits – that this policy is common to the Inspectors regardless of their geographic location, specific job title, or client project.  This is all that is required at this stage.  CIS's affirmative exemption defense is an attempt to avoid liability for its FLSA violations and should not prevent notice to be issued to similarly situated Inspectors.  Moreover, the Court may never need to review the Inspectors' job duties, because CIS will not be able to meet its burden of demonstrating that it compensated its Inspectors on a salary basis.

---

[6] CIS incorrectly asserts that "four other individuals have filed consents in the hope of being accepted as opt-ins." Def.'s Mot. at 2.  In fact, five (5) Inspectors have affirmatively joined this action by filing Opt-In Consent Forms, all of whom have attested on their forms that CIS paid them "on a day rate basis" and they "have not received any overtime compensation." (ECF Nos. 1-1, 1-2, 2-1, 4-1).

[7] *See Cunningham v. Faerber's Bee Window, Inc.*, 1:04cv500-LJM-VSS, 2005 WL 1123634, *3 (S.D. Ind. Apr. 19, 2005) (distinguishing between a day rate paid per day of work and a salary and granting summary judgment to employee as being paid a day rate and not a salary); *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 268 (5th Cir. 2000) (the "employees here are not paid a salary for a workweek. Instead, they are paid for the number of days they work in a week: a day-rate.").

Plaintiffs' Motion should be granted, and notice should be promptly issued so that Inspectors may choose to join the litigation and toll the statute of limitations on their claims.

**3.      Plaintiffs Have Established That Inspectors Perform Substantially Similar Job Duties, Work Under Similar Working Conditions, And Are Subject To The Same Reporting Structure**

Notwithstanding that job duties are not relevant at this stage, Plaintiffs have demonstrated that they are similarly situated with respect to both the compensation policies and that they all performed similar job duties, and CIS did not provide evidence to refute Plaintiffs' assertions.  In it opposition, CIS asserts that Plaintiffs seek to represent "over 2,800 individuals who worked in 172 job titles on 5,800 job orders/projects for 138 different clients: *i.e.*, no similarity of working conditions, of supervision, or work duties."  Def.'s Opp. at 1.   Yet, CIS did not identify the list of those job titles or projects, or discuss how the duties of one type of inspector differed from those in any meaningful respect relevant to conditional certification.

As an initial matter, CIS has provided no support for its assertion that Plaintiffs' proposed collective includes "all of CIS' exempt field employees."  Def.'s Opp. at 4.  In making that statement, CIS ignores the actual proposed FLSA Collective as defined in Plaintiffs' Notice Motion: "all current and former employees of Cleveland Integrity Services, Inc. ('CIS') **who held the job title of inspector or similar title ('Inspectors')** in the United States in any workweek between three years prior to the date of the Court's Order and the present."  Notice Motion at 1 (emphasis added).  CIS cannot use this unsupported assertion to argue that Plaintiffs request conditional certification of a broader and amorphous group of employees.

While Plaintiffs maintain that an inquiry into working conditions, supervision, and duties are not necessary to determine that CIS violated the FLSA by paying its Inspectors on a day rate basis without overtime compensation, to the extent the Court wishes to review these factors, Plaintiffs have established that they and the Inspectors perform substantially similar job duties,

11

work under similar job conditions, and are subject to the same reporting structure, such that conditional certification is appropriate. *See* Notice Motion at 2, 4-7.

In fact, as outlined in Plaintiffs' Complaint and Notice Motion, all of the Inspectors perform similar job duties, including "test[ing] and observ[ing] pipeline construction, welding, and coating processes to ensure compliance with client specifications and industry standards." Notice Motion at 6 (citing Complaint ¶ 22); *see also* Ex. O to Notice Motion, Opt-In Daily Reports (provided by the client with an "Inspector's Checklist" of activities the Inspector is to review and ensure were complied with). Courts have conditionally certified similar classes of pipeline inspectors who have different job titles. *See Fenley*, 2016 WL 1059681, at *5.

Moreover, minor differences in day to day job duties do not preclude conditional certification. *See, e.g.*, *Schroeder v. Humana Inc.*, No. 12-cv-0137, 2012 WL 5931886, at *8 (E.D. Wis. Nov. 27, 2012) (Griesbach, J.) (conditionally certifying collective of nurses who alleged they were misclassified as exempt, and holding "[t]hese nurses all perform similar utilization management functions, and are all uniformly classified as exempt. This is more important in evaluating the merits of conditional certification under § 216(b) than the specific similarities or dissimilarities of the nurses' daily duties.").[8] As Judge Crabb held in *Austin v. CUNA Mutual*

---

[8] *See also Smallwood v. Illinois Bell Tel. Co.,* 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) (finding a common policy or plan to reclassify employees as exempt was "far more important than any similarities or dissimilarities regarding the nuts and bolts of the employees day-to-day duties"); *Betancourt v. Maxim Healthcare Services, Inc* ., 10-cv-4763, 2011 WL 1548964, *8 (N.D. Ill. Apr.21, 2011) (explaining that arguments that "a class should be decertified or that subclasses are necessary because of variations in the job duties and responsibilities" are more appropriately handled after discovery has progressed); *Jirak v. Abbott Laboratories, Inc.,* 566 F. Supp. 2d 845, 848-49 (N.D. Ill. 2008) ("Plaintiffs do not have to show that the potential class members have identical positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay."); *Perry v. Nat'l City Mtge., Inc.,* No. 05-cv-891, 2007 WL 1810472, *3-4 (S.D. Ill. June 21, 2007) (conditionally certifying class of 5,500 loan originators despite defendant's argument that job duties varied depending on their classification, because loan originators had the same "overall

*Insurance Society,* 232 F.R.D. 601, 606 (W.D. Wis. 2006):

> The possibility of a fact-intensive inquiry into whether all members of the putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage. Defendant's arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review.

*Austin,* 232 F.R.D. at 606; *Witteman v. Wisconsin Bell, Inc.*, No. 09-CV-440-VIS, 2010 WL 446033, at *2 (W.D. Wis. Feb. 2, 2010) (Crabb, J.) (granting conditional certification in misclassification case and citing *Austin*).

CIS does not dispute that Plaintiffs and the Inspectors are all paid under an identical pay policy and Plaintiffs have established that that the Inspectors perform substantially similar work. CIS should not now be allowed to argue that the Court must look at individual job duties. *See, e.g.*, *Jirak*, 566 F. Supp. 2d at 849-50 ("It is somewhat disingenuous ... for Defendants to argue that they should be permitted to treat all [potential class members] as one group for purposes of classifying them as exempt, but that this court can only determine the validity of that classification by looking to the specific job duties of each individual [employee].") (citing *Delgado v. Ortho-McNeil, Inc.*, No. 07-cv-263, 2007 WL 2847238, at *2 (C.D. Cal. Aug. 7, 2007). Plaintiffs' proposed FLSA Collective should be conditionally certified.[9]

---

mission").

[9] To the extent that CIS intends to argue that Plaintiffs' proposed FLSA Collective is "grandiose" and unmanageable based on its totally unsupported calculation that the FLSA Collective contains "2,800 individuals in 172 job titles," district courts routinely conditionally certify large groups of potential class members, especially where, as here, the defendant has shown no difficulty in identifying the potential class. *See, e.g.*, *Gaffers*, 2016 WL 4445428, at *13 (conditionally certifying a collective of over 6,000 individuals and noting "even at this preliminary stage of the case, the defendant evidently has had no difficulty defining with some precision the contours of the population of potential opt-in plaintiffs; it already asserts that it knows all of the job titles under which they worked, the full retinue of computer and telecommunication systems that are used by

### 4.     Misclassification Cases Are Appropriate For Conditional Certification

CIS is not the first company to argue that potential exemptions get in the way of conditionally certifying a group of inspectors who were paid on a day rate basis.  Indeed, as outlined in Plaintiffs' opening brief, CIS's competitor, Wood Group Mustang, Inc., recently made the same arguments, and failed.  *See* Notice Motion at 18; *Fenley v. Wood Grp. Mustang, Inc.*, -- F. Supp. 3d --, 2016 WL 1059681, at *4 (S.D. Ohio Mar. 17, 2016).  In granting the plaintiff's motion to conditionally certify a nationwide collective of over 700 inspectors, who held almost 40 different inspector job titles, the United States District Court for the Sothern District of Ohio specifically rejected the defendant's exemption argument, holding "[defendant] spent considerable time and effort hashing out the potential exemptions that it may be able to invoke as a defense to individual -- and groups of individual -- Inspectors […] It is not proper for the Court to consider such matters at this stage of the litigation."  *Id.* at *4.

Contrary to CIS' assertion that "misclassification cases seldom qualify for collective actions" (Def.'s Opp. at 13), district courts in this Circuit and around the country routinely grant nationwide conditional certification in misclassification cases, including in the oil and gas industry.  *See, e.g., Schroeder*, 2012 WL 5931886, at *8; *Betancourt*, 2011 WL 1548964, at *8; *Jirak*, 566 F. Supp. 2d at 848-49; *Casarotto v. Expl. Drilling, Inc.*, No. 15-cv-41, 2015 WL 6080755, at *5 (D. Mont. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 8780050 (D. Mont. Dec. 15, 2015) (conditionally certifying nationwide collective of Flowback Operators who were paid on a day rate basis in case where defendant argued that various exemptions,

---

different groups of employees, and that some of those positions may be exempt from the overtime pay regulations. The defendant's exhaustive presentation on the details of the potential plaintiffs' employment circumstances belies its contention that the case is hopelessly intractable as a collective action, and in fact suggests the opposite.").

including the highly compensated exemption, applied); *Wedel v. Gyro Techs., Inc.*, No. 2:15-cv-93, 2015 WL 5918216, at *6 (S.D. Tex. Sept. 2, 2015), *report and recommendation adopted sub nom.*, *Wedel v. Vaughn Energy Servs., LLC*, No. 2:15-CV-93, 2015 WL 5920034 (S.D. Tex. Oct. 9, 2015) (conditionally certifying nationwide collective of allegedly misclassfied Survey Engineers); *McPherson v. LEAM Drilling Sys., LLC, et al.*, No. 4:14-cv-02361, 2015 WL 1470554, at *1 (S.D. Tex. Mar. 30, 2015) (conditionally certifying collective of allegedly misclassified drillers and operators who worked in various locations, performed some differing tasks, and whose job levels ranged from I to IV) (citing cases holding same); *Boudreaux v. Schlumberger Tech. Corp.*, No. CIV. 6:14-2267, 2015 WL 796602, at *8 (W.D. La. Feb. 25, 2015) (certifying nationwide collective of allegedly misclassified Drillers and Operators); *Jones v. All. Inspection Mgmt., LLC*, No. 13-cv-1662, 2014 WL 1653112, at *4 (W.D. Pa. Apr. 24, 2014) (conditionally certifying nationwide collective of "Field Service Managers" who were allegedly misclassified as exempt).[10]

Finally, CIS's reliance on *Ruiz v. Serco, Inc.*, No. 10-CV-394-BBC, 2011 WL 7138732 (W.D. Wis. Aug. 5, 2011) (Crabb, J.) is misplaced.  CIS cites *Ruiz* in support of its argument that "the similarly situated inquiry in this case must be analyzed in terms of the nature of the job duties

---

[10] *See also Perkins v. Southern New England Telephone Co.,* 669 F. Supp. 2d 212, 218 (D. Conn. 2009) (granting conditional and class certification in misclassification case, and holding "section 216(b) clearly applies to misclassification claims as well as other FLSA claims. Had Congress intended to exclude misclassification claims from collective actions, it would have done so"); *Lapan v. Dick's Sporting Goods, Inc.*, No. 13-cv-11390, 2014 WL 4206212, at *1 (D. Mass. Aug. 20, 2014) (certifying nationwide collective in misclassification case); *Goodman v. Burlington Coat Factory*, No. 11-cv-4395, 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012) (same); *Ravenell v. Avis Budget Car Rental, LLC*, No. 08-cv-2113, 2010 WL 2921508, at *6 (E.D.N.Y. July 19, 2010) (same); *Bouder v. Prudential Fin., Inc.*, No. 06-cv-4359 (DMC), 2008 WL 7898281, at *5 (D.N.J. Mar. 27, 2008) (same); *Craig v. Rite Aid Corp.*, No. 08-cv-2317, 2009 WL 4723286, at *4 (M.D. Pa. Dec. 9, 2009) (conditionally certifying nationwide "class of persons who were employed by Rite Aid in any of the 4,901 stores as assistant managers within the previous three years and were classified as exempt, salaried employees").

performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt." Def.'s Opp. at 12 (citing *Ruiz*, 2011 WL 7138732, at *4). *Ruiz*, however, is distinguishable from this action. In *Ruiz*, the plaintiffs originally sought conditional certification of a "broad" potential collective, "encompassing all of defendant's employees who provided support services to members of the military or their families." *Ruiz*, 2011 WL 7138732. On June, 9, 2011, the Court denied conditional certification, holding "[p]laintiffs had failed to make even a modest factual showing that they were similarly situated to the individuals covered under the proposed definition and they *had not identified a specific common policy or practice of defendants that caused the alleged FLSA violations at issue*." *Id.* (emphasis added); *see also Ruiz* Order Denying Conditional Certification, ECF No. 75 (W.D. Wis. June 9, 2011).

The *Ruiz* plaintiffs then narrowed their proposed class definition and submitted discovery in support of their arguments. The Court again denied conditional certification, holding "[p]laintiffs' evidence does not support a finding that plaintiffs are similarly situated to the potential class members with respect to job duties and levels of discretion or with respect to the policy defendant used to determine whether they should be classified as exempt." *Id.* Here, no discovery has been conducted, and Plaintiffs have shown both that Inspectors are all paid pursuant to an identical pay policy and that the Inspectors perform substantially similar work.[11] Conditional

---

[11] The other cases from Circuit that CIS cites in support of this proposition are equally inapposite. *See, e.g. Steger v. Life Time Fitness, Inc.*, No. 14-cv-6056, 2016 WL 245899, at *4 (N.D. Ill. Jan. 21, 2016) (applying intermediate standard of review to conditional certification following phased discovery on class certification issues); *Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 WL 4379232, at *9 (N.D. Ill. Aug. 27, 2014) (analyzing class certification under Rule 23, not conditional certification under the FLSA); *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 720 (N.D. Ill. 2012) (applying second stage standard because discovery had been completed); *Forney v. TTX Co.*, No. CIV.A. 05 C 6257, 2006 WL 1030194, at *2 (N.D. Ill. Apr. 17, 2006) (holding plaintiff "fail[ed] to identify a single [] employee who performed duties similar to hers");

certification is appropriate.

**D.      CIS' Illegal Arbitration Agreement Is Not A Bar To Conditional Certification**

As set forth above, Plaintiffs have demonstrated that they are similarly situated, and that, pursuant to the Supreme Court's directive as followed by this Court as well as courts throughout the country, notice should be issued at this early stage so that individuals may file their consents on the docket to preserve their statutory rights under the FLSA.  Contrary to its arguments, CIS's illegal arbitration agreement is not a reason to deny conditional certification.  CIS requests that the Court deny conditional certification, arguing that "if the Arbitration Agreement is enforced, there is no case for the invitees to join: the litigation shifts entirely to arbitration."  Def.'s Mot. at 3.

CIS misses the point, because if this Court follows the binding precedent from Seventh Circuit and the persuasive authority from the Ninth Circuit to determine that CIS's Arbitration Agreement is illegal, there will be no agreement to enforce.  *See, e.g.*, *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1161 (7th Cir. 2016) (holding illegal and unenforceable an arbitration agreement that "precludes employees from seeking any class, collective, or representative remedies to wage-and-hour disputes"); *Morris v. Ernst & Young, LLP*, -- F.3d --, 2016 WL 443080 (9th Cir. Aug. 22, 2016) (citing *Lewis* and holding arbitration provision within defendant's employment agreement that restricts employees to litigating employment disputes on an individual basis in "separate proceedings" violates Sections 7 and 8 of NLRA and cannot be enforced); *see also* Pls.' Opp. to Def.'s Mot. to Transfer Venue at 9-14 (ECF No. 31).

This principal was put into practice just a few weeks ago by the United States District Court

---

*Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) (denying conditional certification in an independent contractor case, holding "[plaintiff] makes no showing that other potential claimants performed the same type of duties as himself, or that they could be classified as independent contractors.").

for the Eastern District of Michigan in *Gaffers v. Kelly Servs., Inc.* when the district court denied the defendant's motion to stay and compel arbitration and granted conditional certification of the FLSA action. *See Gaffers*, 2016 WL 4445428, at *10-12. In *Gaffers*, the plaintiff, a home-based call center agent for Kelly Services, Inc., alleged that defendant failed to pay proper overtime compensation to him and a potential collective of over 6,000 individuals. *Id.* at *1. Plaintiff moved for conditional certification, and defendant opposed, citing arguments against conditional certification and arguing that "because all of its employees since November 2014 have signed an agreement to give up their rights under the FLSA to prosecute or participate in a collective action…they must arbitrate any employment disputes on an individual basis." *Id.*

Citing *Lewis* and *Morris*, the district court first held illegal and unenforceable the arbitration provision as it "require[d] employees to arbitrate FLSA claims in an arbitral forum on an individual basis." *Id.* at *10. The court specifically held "[a]fter reviewing the controlling decisions on point, it is safe to conclude that the agreement to arbitrate in this case cannot be enforced to bar the plaintiffs from pursing a collective action in any forum to resolve their unpaid overtime claims." *Id.* at *8. The district court summarized its reasoning for rejecting the arbitration agreement in five parts:

> *First*, it is beyond question that "Section 16(b) of the FLSA *gives employees the right* to bring a private cause of action *on their own behalf and on behalf of 'other employees similarly situated'* for specified violations of the FLSA." *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ____, 133 S. Ct. 1523, 1527 (2013) (emphasis added). […]
>
> *Second*, this right to a collective action is not "merely procedural," and the law recognizes no such distinction between "procedural" and "substantive" rights under the FLSA. […]
>
> *Third*, notwithstanding the well established disposition of the federal courts toward upholding valid arbitration agreements, it is equally well established that no form of contract may be construed to force a waiver of an employee's rights under the FLSA. […]

18

*Fourth*, the arbitration provision in the defendant's employment contract, coupled with the class-waiver provision, is unlawful when applied to claims for collective actions under the FLSA. Consequently, it is unenforceable under the FAA's savings clause on a "ground[ ] [that] exist[s] at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Lewis*, 823 F.3d at 1159-60 (noting that "'[t]o immunize an arbitration agreement from judicial challenge on' a traditional ground such as illegality 'would be to elevate it over other forms of contract — a situation inconsistent with the "saving clause"'") (quoting *Prima Paint*, 388 U.S. at 404 n.12). [...]

*Fifth*, the remedy addressing the illegality in this case cannot be to compel the post-November 2014 opt in plaintiffs to take their collective action to arbitration. If the agreement explicitly *permitted* collective arbitration, then the Court would be compelled to weigh carefully the federal policy interests in favor of and against compelling the parties to honor the agreement to arbitrate wage disputes. But that is not the agreement before the Court, and the Court may not construe it to allow collective arbitration in the absence of express consent to that form of action. [...] Kelly and some of its employees signed agreements to arbitrate *individually* all disputes they might have over unpaid overtime wages. They did not agree to arbitrate collective claims, such as were brought in this case. Kelly may not leverage the *absence* of consent to "opt out" of collective resolution of the plaintiffs' unpaid overtime claims, by the artifice of embedding a purported waiver of the right to collective litigation in an arbitration agreement covering only individual claims, because the right to proceed collectively under section 216(b) is not one that may be waived by contract, in an arbitration agreement or otherwise.

*Id.* at *8-10.

The court then analyzed the issues relevant to conditional certification.  Similar to here, in

*Gaffers*, the defendant argued the "proposed class would consist of over 6,000 employees, many

of whom work in job positions that differ from the plaintiff and the identified opt-ins [and that]

the case is not manageable as a collective action because resolution of the thousands of potential

opt-in plaintiffs' claims would require a series of fact-specific, individualized inquiries to analyze

the practices and experiences of each collective action member."  *Id.* at *11.

Rejecting those arguments, the district court held "[t]he plaintiffs need not show that they

are identically situated in every detail in order to proceed collectively. Here, the plaintiffs all work

in a virtual or remote call center environment, they all provide the same basic service [...], and

they all allege the same basic factual and legal premises in support of their unpaid overtime claims." *Id.* at *12.  The district court then ordered that defendant provide to plaintiffs' counsel the notice list for the conditionally certified collective.  *Id.* at *13.

The arguments in *Gaffers* are remarkably similar to those made by CIS here.  Indeed, just as in *Gaffers*, CIS has asserted its arbitration agreement would require Plaintiffs (and potentially a large portion of the FLSA Collective) to submit their claims to arbitration (Def.'s Opp. at 2-3), and Plaintiffs' proposed FLSA Collective is unmanageable (Def.'s Opp. at 20).  And, just as in *Gaffers*, Plaintiffs Gundrum and King have shown that CIS's arbitration agreement is illegal and unenforceable and have demonstrated that they and the other Inspectors: (1) are all paid pursuant to CIS's identical day rate payment scheme that they allege violates the FLSA; and (2) all perform substantially similar job duties.  This Court should follow the Eastern District of Michigan, reject CIS's arbitration agreement, and grant conditional certification of this action.

**E.     Plaintiffs' Proposed Notice Plan Is Necessary And Appropriate To Effectuate Timely And Accurate Notice**

CIS raises only several objections to Plaintiffs' proposed Notice Plan, which should be rejected.   CIS misconstrues Plaintiffs' Notice, fails to acknowledge much of the case law supporting Plaintiffs' position and relies on fact-specific cases that are distinguishable from this action.   CIS's objections can be summarily rejected but Plaintiff will address each in turn.  Moreover, to the extent that any differences remain, the Court should grant conditional certification and order the parties to meet and confer regarding any outstanding disputes on the notice plan.  *See* Def.'s Opp. at 20 ("If the Court decides that a collective action is warranted, it should -- as most courts do -- instruct the parties to confer and submit a joint notice plan in ten days.").

### 1.    Plaintiffs' Proposed Notice Plan Is Proper

CIS primarily attacks Plaintiffs' Notice, Opt-In Consent Form, and plan for distribution on the mistaken assumption that Plaintiffs' proposals constitute impermissible solicitation.  CIS is plainly incorrect.

First, without providing any legal support, CIS asserts that only a third-party administrator should be allowed to have access to the notice list. Def.'s Opp. at 17.  That request is inappropriate: District courts routinely require defendants to produce such information to plaintiffs' counsel.  *See, e.g.*, *Bitner*, 301 F.R.D. at 364 (requiring notice list to be produced to plaintiffs' counsel); *Berndt*, 2013 WL 3287599, at *13 (same); *see also Woods*, 140 F. Supp. 3d 775 at 785 ("The purpose of the provisioning such information to Plaintiff's counsel is to assist them in identifying potential plaintiffs. Obviously, a list of names, last known addresses, dates of employment, and email addresses are necessary to do so.").

Second, CIS makes a wholly unsupported argument that the proposed Opt-In Consent Form (attached as Ex. B to Plaintiffs' Notice Motion) should not include reference to authorizing Plaintiffs and Berger & Montague, P.C. to represent the individual.  *See* Def.'s Opp. at 17.  It is well settled that Opt-In Plaintiffs may authorize the named plaintiffs and their counsel to represent them.  *See, e.g.*, *Mott v. Driveline Retail Merch., Inc.*, 23 F. Supp. 3d 483, 494 (E.D. Pa. 2014) (approving language stating "I authorize the [plaintiff's counsel] to represent me in this case."); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1134 (N.D. Cal. 2009) (approving language "I choose to be represented in this matter by the named Plaintiffs and counsel [] in this action.").

Third, CIS asserts that Plaintiffs' counsel's contact information should not be listed as a contact option for questions regarding retaliation.  It is unsurprising that CIS failed to cite any case law in support of that proposition because district courts around the country, and in this District, routinely approve notices that contain plaintiff's counsel's contact information for questions about

retaliation.  *See, e.g.*, *Austin*, 232 F.R.D. at 608 (ordering that notice contain the following language on retaliation: "The law prohibits anyone from discriminating or retaliating against you for taking part in this case. If you believe you have been discriminated or retaliated against in any way as a result of your receipt of this Notice or your decision to participate in this lawsuit, you should contact us [plaintiff's counsel] immediately.").

Fourth, while CIS does not object to the proposed 90 day notice program, CIS objects to Plaintiffs' proposed distribution plan, arguing Plaintiffs' proposal requesting that the Court authorize posting of the Notice, and mailing of the Notice and a duplicate reminder via mail and email amount to solicitation.  As discussed in length in Plaintiffs' Notice Motion, this proposal is made with the explicit purpose of fulfilling the broad remedial goals of the FLSA by allowing the Notice to reach the maximum number of individuals who are eligible to join this action.  *See* Notice Motion at 22-23 (citing cases).  This is especially important here, due to the nature of the jobs in which the potential opt-in plaintiffs work.  Pipeline inspectors' jobs require them to be away from their homes for months on end and therefore, many may not receive their mail, or will not receive it on a timely basis.  *Id.* at 23.  CIS's request to slow down the notice process by sending only one form of Notice via regular mail should be denied.  *See, e.g.*, *Johnson v. Pink Spot Vapors, Inc.*, No. 2:14-cv-01960, 2015 WL 1413614, at *6 (D. Nev. Mar. 27, 2015) ("Email is an efficient, reasonable, and low cost supplemental form of notice, particularly where the Defendants may lack current physical mailing address information for its former employees.") (internal citation omitted); *see also* Notice Motion at 2224 (citing cases approving proposed notice methods).  Of course, CIS uses email to communicate with its employees all the time.

### 2.     CIS Should Not Be Allowed To Further Delay Notice Being Sent In This Action

CIS continues its campaign to keep potential class members from opting into this action

by requesting that it be given an indeterminate amount of time to produce a class list.  This is unnecessary.  As evidenced by CIS's Opposition Brief and the declaration of Mr. Frye, it has already identified every person that could potentially be included in the FLSA Collective.  *See* Def.'s Opp. at 1, 4; Frye Decl. at 3.  While this number may be over-inclusive, CIS should have no problem narrowing it within the seven (7) day period outlined in Plaintiffs' Notice Plan.  *See Berndt*, 2013 WL 3287599, at *13 (requiring notice list to be produced within 10 days).

### 3.     Potential Opt-In Plaintiffs Will Not Be Liable For Court Costs

CIS's final attempt to keep individuals from joining this action comes in the form of its request that the Notice "advise potential class members of the potential risk that opting in may carry."  Def.'s Opp. at 19-20.

Plaintiffs are aware that under certain circumstances, district courts, including this Court, require notices to contain language alerting potential opt-in plaintiffs that if they do not prevail on their claim, "court costs and expenses may possibly be assessed against the class."  *Fosbinder-Bittorf*, 2013 WL 3287634, at *7.  Respectfully, Plaintiffs assert that inclusion of such language in this case will have a "chilling" effect on "would-be plaintiffs' participation in the collective action" and "may well outweigh the risk to those plaintiffs of incurring litigation costs (by way of lost time or even counsel fees) as a result of their participation."  *Boltinghouse v. Abbott Labs., Inc.*, No. 15 CV 6223, 2016 WL 3940096, at *4 (N.D. Ill. July 20, 2016) (citing *Woods*, 140 F. Supp. 3d at 783 (rejecting request for inclusion of costs language, holding some courts "have generally disapproved of including language indicating ... the possible costs of litigation given the remote possibility that such costs absent class members would be other than *de minimis*, as well as the risk of an *in terrorem* effect that is disproportionate to the actual likelihood of significant costs"));

*Austin*, 232 F.R.D. at 608 (rejecting request for language related to fees)).[12]

CIS's requests should be denied, and Plaintiffs' proposed Notice, Opt-In Consent Form, and distribution plan should be approved.

## III.   <u>CONCLUSION</u>

Based upon the foregoing reasons, and those set forth in Plaintiffs' opening Memorandum, Plaintiffs respectfully requests that this motion be granted and that Plaintiffs' proposed Notice be approved.

Dated: September 12, 2016                    Respectfully submitted,

                                             <u>/s/ Sarah R. Schalman-Bergen</u>
                                             Shanon J. Carson
                                             Sarah R. Schalman-Bergen
                                             Alexandra K. Piazza
                                             Camille Fundora
                                             BERGER & MONTAGUE, P.C.
                                             1622 Locust Street
                                             Philadelphia, PA 19103
                                             Telephone: (215) 875-3000
                                             Facsimile: (215) 875-4604
                                             scarson@bm.net
                                             sschalman-bergen@bm.net

---

[12] If, however, the Court believes that language related to costs is necessary, Plaintiffs respectfully request that the Court approve the below language, which has been approved by several district courts:

> If the Court ultimately concludes that CIS is the prevailing party in this lawsuit, the Court may award costs of litigation—other than CIS's attorneys' and expert fees—to CIS. If you retain Berger & Montague, P.C. as your lawyers in this case, that law firm will assume responsibility for such costs and individual Plaintiffs will not be liable for them. A similar arrangement may be possible should you retain separate counsel, but you will be personally responsible for negotiating the terms of your agreement with your chosen counsel.

*See Dunkel v. Warrior Energy Servs.*, 304 F.R.D. 193, 207 (W.D. Pa. 2014) (approving similar language in oil and gas case); *Roberts v. S.B. Southern Welding, LLC*, No. 3:14-cv-3617-B, 2015 WL 8773610, at *2 (N.D. Tex. Dec. 15, 2015) (applying the approach in *Dunkel* using language stating plaintiff's attorney would be responsible for litigation costs assessed against class members); *Bland v. PNC Bank, N.A.*, No. 15-cv-1042, 2015 WL 7587365, at * 3 (W.D. Pa. Nov. 25, 2015) (ordering the notice to include language stating plaintiff's counsel will indemnify against class members should defendant be awarded litigation costs).

apiazza@bm.net
cfundora@bm.net

Lester A. Pines
Cullen Weston Pines & Bach LLP
122 West Washington Ave., Suite 900
Madison, WI 53703
Telephone: (608) 251-0101
Facsimile: (608) 251-288
pines@cwpb.com

*Attorneys for Plaintiffs and the Proposed
FLSA Collective*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which served the foregoing document on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen
