IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ERIC GUNDRUM and MICHAEL KING, individually and on behalf of those similarly situated,

Plaintiff,

v.

CLEVELAND INTEGRITY SERVICES, INC.,

Defendant.

OPINION AND ORDER

16-cv-369-wmc

In this lawsuit, plaintiffs Eric Gundrum and Michael King bring a putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, against defendant Cleveland Integrity Services, Inc. ("Cleveland").  Plaintiffs allege that Cleveland underpaid them and other similarly situated employees overtime as required by the FLSA.  This opinion addresses defendant's threshold motion to transfer this case to the District Court for the Northern District of Oklahoma pursuant to a forum selection clause contained in an arbitration agreement between the parties (dkt. #18), which plaintiffs oppose on the basis that the arbitration agreement is illegal and unenforceable.  Because plaintiffs have failed to establish that the forum selection clause is invalid for the reasons explained below, defendant's motion will be granted.

BACKGROUND

Defendant Cleveland is incorporated in Oklahoma and has its headquarters in Cleveland, Oklahoma.  (Compl. (dkt. #1) ¶ 6.)  Cleveland is in the business of "providing

third party inspection services for the construction and maintenance of oil and natural gas transmission, midstream and gathering lines, facility construction, meter runs and many other types of oil and gas construction throughout the United States." (*Id.* at ¶ 5.) Plaintiffs Gundrum and King are both residents of Nevada who were employed by Cleveland as "pipeline inspectors." (*Id.* at ¶¶ 3, 4.) Both plaintiffs worked in Wisconsin and Illinois as part of something called the "Line 66 Pipeline Project."[1] (*Id.* at ¶ 19.)

Although they "routinely worked between six (6) days to seven (7) days per week and typically more than ten (10) hours per day, up to fifteen (15) hours," plaintiffs allege that Cleveland willfully ignored its obligation to compensate them properly for overtime. (*Id.* at ¶¶ 28, 33.) Instead, plaintiffs allege, Cleveland used a "daily rate compensation system that did not take into account all hours worked in a workweek or overtime hours." (*Id.* at ¶ 25.) Cleveland denies plaintiffs' allegations.

Plaintiffs have moved for conditional certification of a collective FSLA action under 29 U.S.C. § 216(b) (dkt. #6), but before determining whether conditional certification is appropriate, the court must first address defendant's motion to transfer this case to the Northern District of Oklahoma as called for by a forum selection clause in the arbitration agreement signed by plaintiffs at the outset of their employment. By signing Cleveland's "Agreement to Arbitrate Disputes," plaintiffs Gundrum and King agreed to "submit to binding arbitration any dispute, claim or controversy arising from

---

[1] Invoking this court's federal question jurisdiction under the FLSA, plaintiffs assert that venue is proper here because "a substantial part of the events giving rise to" the FLSA claims took place in this district. 28 U.S.C. § 1391(b)(2). In particular, plaintiffs allege that they and the other putative class members performed work and were paid pursuant to defendant's policies in this district and that defendant "routinely conducts business in this judicial district." (Compl. (dkt. #1) ¶ 2.)

[their] employment with Cleveland Integrity Services, Inc., including, but not limited to, . . . all employment disputes, including, but not limited to, those arising under . . . [the] FLSA[.]" (Def.'s Exs. (dkt. ##21-1, 23).) The arbitration agreements further state that "[a]ny Arbitration shall be conducted by one (1) arbitrator under the rules of the American Arbitration Association and shall be held at the offices of Cleveland Integrity Services, Inc. of Cleveland, Oklahoma." (*Id.*)

## OPINION

The U.S. Supreme Court recently clarified that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," which is codified in 28 U.S.C. § 1404(a) "for the subset of cases in which the transferee forum is within the federal court system[.]" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. ___, 134 S. Ct. 568, 580 (2013). The Court also clarified that the § 1404(a) analysis must be adjusted when a valid forum selection clause is the basis for a motion to transfer; specifically, (1) "the plaintiff's choice of forum merits no weight," (2) the parties' private interests are immaterial and (3) the court should not weigh the transferee court's familiarity with the law that would be determined by the transferor court's choice of law rules, since those rules will not be transferred along with a § 1404(a) transfer. *Id.* at 581-82.

Consequently, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.

Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 581 (footnote omitted).

In support of its transfer motion, defendant also points to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995), which held that when "the location of arbitration is preordained," motions to compel arbitration under § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, must be brought in the district where arbitration is to take place. *Id.* at 327 (citing *Lawn v. Franklin*, 328 F. Supp. 791, 793 (S.D.N.Y. 1971) ("The proper District within which the petition for [a § 4] order should be filed is the District where the 'proceedings' by virtue of the contract of the parties are to take place.")); *see also Daniels v. Painter*, Case No. 15-CV-1334, 2016 WL 3034246, at *5 (granting the defendants' § 1404(a) motion to transfer the case to the Central District of California pursuant to arbitration agreements providing for exclusive arbitration in Los Angeles, despite the plaintiffs' challenge to the scope of the arbitration clause).  Here, the Seventh Circuit's *Merrill Lynch* decision, therefore, would appear to dictate a direct transfer to the Northern District of Oklahoma.

Plaintiffs oppose defendant's motion to transfer on the grounds that the *Atlantic Marine*, *Merrill Lynch* and *Daniels* decisions are all factually distinguishable because the *validity* of the forum selection clauses in those cases was not in dispute.[2]  Plaintiffs assert

---

[2] Since the Supreme Court acknowledged that its "analysis presupposes a contractually valid forum-selection clause," 134 S. Ct. at 581 n.5, commenters have criticized *Atlantic Marine* for leaving open significant questions, including "which court should determine the validity of a forum-selection clause, subject to what law, and when." *See* Linda S. Mullenix, *Gaming the System: Protecting Consumers from Unconscionable Contractual Forum-Selection and Arbitration Clauses*, 66 Hastings L.J. 719, 721 (2014); Stephen E. Sachs, *Five Questions after Atlantic Marine*, 66 Hastings L.J. 761 (2014).  Neither the Supreme Court nor the Seventh Circuit has addressed those

that here, in contrast, Cleveland's arbitration agreement is "illegal and unenforceable on its face," in light of the Seventh Circuit's decision in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016). In *Lewis*, the Seventh Circuit affirmed the district court's denial of defendant Epic's motion to compel arbitration, holding that "[b]ecause it precludes employees from seeking any class, collective, or representative remedies to wage-and-hour disputes, Epic's arbitration provision violates Sections 7 and 8 of the NLRA [("National Labor Relations Act")]." *Id.* at 1161.

Here, in contrast, Cleveland's arbitration agreement contains *no* term precluding class or collective remedies. Even so, plaintiffs contend that the holding in *Lewis* applies here because Cleveland argued in a motion to compel individual arbitration in a similar collective action in the District of Kansas, that the same arbitration language at issue here "does not provide for class or collective actions, [so] none are permitted[.]"[3] (Pls.' Opp'n Br. (dkt. #31) at 4-5.)

---

questions, and so they remain open. Since the *Atlantic Marine* decision, however, a court addressing a § 1404(a) motion to transfer based on a forum selection clause must at least still analyze whether "extraordinary circumstances unrelated to the convenience of the parties" exist before transferring a case even when the forum selection clause is valid. 134 S. Ct. at 581; *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) (it is "well established" that "a federal court has a duty to determine whether a contract violates federal law before enforcing it"). Accordingly, the court will address the merits of plaintiffs' challenge to the forum selection provision in Cleveland's arbitration agreement below.

[3] Plaintiffs add that when the plaintiff in the District of Kansas case "refiled his collective action in arbitration" in response to Cleveland's motion to compel individual arbitration, Cleveland "filed a Complaint for Declaratory Judgment against Plaintiff Albee, requesting that the District of Kansas declare that Albee was precluded from proceeding on a collective action basis in arbitration." (Pls.' Opp'n Br. (dkt. #31) at 5.) According to plaintiffs, Albee's collective action and Cleveland's declaratory judgment in the District of Kansas "were thereafter resolved on an individual basis." (*Id.*)

Under this interpretation, plaintiffs argue, the arbitration agreement is unlawful, because "[t]he [National Labor Relations] Board [("NLRB")] has held in a number of cases that the maintenance of a mandatory arbitration agreement is unlawful, even if it is silent regarding class or collective claims, if the employer has applied the agreement to preclude employees from pursuing employment-related claims on a class or collective basis in any forum." *Rim Hosp. & Nelson Chico, an Individual*, Case 21-CA-137250, 2016 WL 3626603 (N.L.R.B. Div. of Judges June 15, 2016) (collecting cases); *see also Haynes Bldg. Servs., LLC & J. Tadeo Gomez-Flores*, 363 N.L.R.B. No. 125, at *4 (2016) ("[W]e find that by threatening to compel arbitration on an individual rather than a class or collective basis, the Respondent has applied the Notice to Applicant and Arbitration Agreement to restrict Section 7 rights, in violation of Section 8(a)(1)[.]").

In other words, plaintiffs contend that Cleveland's attempt to read an implied collective action waiver into its arbitration agreement in the District of Kansas litigation violates the NLRA.  As such, that reading would also run afoul of the savings clause of the FAA, which "provides that any written contract 'evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lewis*, 823 F.3d at 1156 (alteration in original) (quoting 9 U.S.C. § 2).

Plaintiffs' arguments against transfer are unavailing for at least two reasons.  *First*, plaintiffs offer no authority to suggest that the NLRB's decisions declaring that employers commit unfair labor practices by threatening to apply arbitration agreements

6

to prohibit collective actions alter the actual, written terms of the parties' arbitration agreement, which in this case is silent with respect to class or collective remedies in arbitration. In *Lewis*, the Seventh Circuit explained that if "concerted activities" in Section 7 of the NLRA could be "read as ambiguous as applied to collective lawsuits," then the NLRB's interpretation of that language as encompassing both class and collective remedies would be entitled to *Chevron* deference, but it did not look to the NLRB to interpret the arbitration agreement itself, which is essentially what plaintiffs are asking the court to do here. 823 F.3d at 1153. Also in contrast to *Lewis*, plaintiffs point to no arguably ambiguous language in the NLRA that the court must first interpret before determining whether Cleveland's arbitration agreement is enforceable. Absent binding authority suggesting that an implied class action waiver should be read into Cleveland's arbitration agreement, the plain language will control, which does not preclude collective remedies. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms.") (internal citations omitted).

*Second*, even if Cleveland's arbitration agreement *could* be interpreted to contain a collective action waiver, material differences between this case and *Lewis* would still weigh strongly in favor of transfer. Critically, the arbitration agreement in *Lewis* "combine[d] two distinct rules: first, any wage-and-hour dispute must be submitted to arbitration rather than pursued in court; and second, no matter where the claim is brought, the plaintiff may not take advantage of any collective procedures available in the tribunal."

7

823 F.3d at 1155.  The agreement also "state[d] that if the collective-action waiver is unenforceable, then any collective claim must proceed in court, not arbitration."  *Id.* at 1156.  As a result, after invalidating the collective action waiver, the district court and Seventh Circuit could still enforce the parties' contracted-for outcome -- litigating the collective action in federal court.

As defendant points out, the arbitration agreement here does not dictate what is to happen if any of its terms are found to be unenforceable.  As a result, questions about what, if anything, remains for arbitration still need to be decided.  Thus, *Lewis* does not support the central premise underlying plaintiffs' challenge to transfer.  Specifically, plaintiffs rely on language in *Lewis* that "the very formation of the contract was illegal" in support of their argument that Cleveland's entire arbitration agreement would be unenforceable if it contained an illegal class action waiver.  (Pls.' Opp'n Br. (dkt. #31) at 12.)  In its proper context, however, that language does not suggest that *other* provisions in arbitration agreements containing class action waivers are necessarily unenforceable. Rather, it undercuts the reasoning, employed by the Fifth Circuit to reach a contrary holding as to the enforceability of collective action waivers in arbitration agreements, that Sections 7 and 8 of the NLRA conflict with the FAA by "burden[ing] arbitration."  *See Lewis*, 823 F.3d at 1157-58 (citing *D.R. Horton v. NLRB*, 737 F.3d 344, 357 (5th Cir. 2013)).  In other words, the Seventh Circuit was merely explaining that Sections 7 and 8 of the NLRA "say nothing about class arbitration or even arbitration generally," but rather impose substantive restrictions on employers that give rise to a *defense to contract formation*, which can trigger the savings clause of the FAA to block motions to compel

individual arbitration. *Id.* at 1158-59.

From the Supreme Court on down, other courts have similarly held that an illegal collective action waiver does not inevitably render the remainder of its provisions unenforceable. *See Rent-A-Center*, 561 U.S. at 70 ("As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.") (citation omitted); *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 989-90 (9th Cir. 2016) (reaching same holding as *Lewis* that collective action waivers in arbitration agreements are invalid under § 7 of the NLRA but "tak[ing] no position on whether arbitration may ultimately be required" and remanding to district court to determine whether the waiver was severable from the contract); *Herrington v. Waterstone Mortg. Corp.*, No. 11-cv-779-bbc, 2012 WL 1242318, at *6 (W.D. Wis. Mar. 16, 2012) ("Because the bar on collective actions is the only aspect of the arbitration agreement that violates the NLRA, this raises the question whether that provision is severable from the rest of the arbitration agreement, so that the matter can be resolved in arbitration, but in the context of a collective action.").

While plaintiffs are correct that the parties in *Lauer* and *Daniels* did not dispute the validity of the forum selection clauses at issue in those cases, the lingering questions about the scope and unenforceability of Cleveland's arbitration agreement bring this case in line with *Lauer*. 49 F.3d at 327 (§ 4 of the FAA "clearly requires a geographic link between the site of arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control"). Similarly, this court lacks that control. *See Daniels*, 2016 WL 3034246, at *5 (granting the defendants' motion to

transfer over the plaintiffs' challenge to the scope of the arbitration clause "because the California court can determine whether and to what extent the parties' disputes are subject to arbitration and, if appropriate, enter a corresponding order compelling arbitration").

Plaintiffs' last two, undeveloped arguments challenging the forum selection provision are also unavailing.  Plaintiffs' argument that transferring the case pursuant to the forum selection clause would "contravene the precedent established by the Seventh Circuit in *Lewis*, which furthers the important public policy of rejecting employers' attempts to restrict employees' substantive right to engage in concerted activity under the NLRA" (Pls.' Opp'n Br. (dkt. #31) at 14), falls short for the reasons already discussed, even assuming *Lewis* can be interpreted as declaring a "strong public policy of the forum."[4]  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."); *see also Atl. Marine*, 134 S. Ct. at 581-82 (placing "the burden of

---

[4] In a footnote, which the court interprets as support for their public policy argument, plaintiffs point out that although the "Tenth Circuit has not invalidated employment-based arbitration agreements that require individual arbitration, . . . a recent decision from the Western District of Oklahoma infers that at least one court in the Tenth Circuit may not agree with the Seventh Circuit and the NLRB in holding illegal arbitration agreements that contain class and collective waivers." (Pls.' Opp'n Br. (dkt. #31) at 14 n.8 (citing *Tiffany v. KO Huts, Inc.*, 178 F. Supp. 3d 1140 (W.D. Okla. 2016).)  At most, plaintiffs argue that "the practical effect of transferring this action would be to *potentially risk* another court holding enforceable an Arbitration Agreement that under Seventh Circuit precedent is squarely illegal and unenforceable."  (*Id.* (emphasis added).)  Even leaving aside that plaintiffs have failed to show that Cleveland's arbitration agreement is "squarely illegal and unenforceable" under *Lewis* for the reasons already explained, plaintiffs cite no authority that such a "potential risk" would justify invalidating the forum selection provision on public policy grounds.  *Cf. Jackson v. Payday Fin., LLC*, 764 F.3d 765, (7th Cir. 2014) (concluding that a forum selection clause pointing to an arbitral tribal forum was unenforceable when the "record clearly establishe[d]" that the forum was "illusory").

establishing that transfer to the forum for which the parties bargained is unwarranted" on the party "defying the forum-selection clause").

Finally, plaintiffs assert in a footnote that the forum selection clause in Cleveland's arbitration agreement is ambiguous and inadequate because it states that arbitration "shall be held at the offices of Cleveland Integrity Services, Inc. of Cleveland, Oklahoma," rather than "affirm '*in*' which locale in arbitration is to occur," unlike the "traditional" forum selection clause in *Daniels*.  (Pls.' Opp'n Br. (dkt. #31) at 17 n.11 (emphasis in original).)  On its face, this undeveloped assertion is really no challenge at all.  *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704-05 (7th Cir. 2010) (finding waiver of party's argument that "came in a three-sentence footnote that lacked any citation to legal authority"); *see also Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756-57 (7th Cir. 1992) (stating that courts will enforce forum selection clauses specifying venue with "mandatory" terms, such as "shall").  Regardless, the court finds no logic, much less legal authority to support plaintiffs' argument that the distinction between "at" and "in" is material.

Having failed to demonstrate that the parties' forum selection clause is invalid, plaintiffs "bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 134 S. Ct. 583.  Plaintiffs have not met that burden here.  Public interest factors ordinarily include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6 (brackets omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981)).   Plaintiffs cite *Kelly v. Bluegreen Corp.*, No. 08-cv-401-bbc, 2008 WL 4962672 (W.D. Wis. Nov. 19, 2008), to argue that the "interests of justice" weigh against transfer because the clock on the putative class members' claims is running, but in light of the Supreme Court's vigorous endorsement of forum selection provisions in *Atlantic Marine*, that factor alone is not enough to deny transfer here.  *Id.* at 581 ("[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.") (second alteration in original) (internal quotation marks and citation omitted).

Plaintiffs do not identify any other public interest factor that even arguably weighs strongly, if at all, in favor of trying plaintiffs' case in this district.   Having failed to establish that the forum selection clauses in their arbitration agreements with defendant are invalid, or to demonstrate that there are any "exceptional factors" weighing against transfer, defendant's motion to transfer to the Northern District of Oklahoma will be granted.

ORDER

IT IS ORDERED that:

1) Defendant's motion to transfer (dkt. #18) is GRANTED.

2) This case is TRANSFERRED to the United States District Court for the Northern District of Oklahoma.

Entered this 31st day of January, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge