## UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ERIC GUNDRUM and MICHAEL KING,** individually and on behalf of all persons similarly situated, | : : : : | **CIVIL ACTION NO.: 4:17-cv-00055-TCK-TLW** |
| **Plaintiffs,** | : : : | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **v.** | : : | |
| **CLEVELAND INTEGRITY SERVICES, INC.,** | : : : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : : | |

### FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Eric Gundrum ("Gundrum") and Michael King ("King") (collectively, "Plaintiffs"), through their undersigned counsel, individually and on behalf of all persons similarly situated, file this First Amended Class and Collective Action Complaint ("FAC") against Defendant Cleveland Integrity Services, Inc. ("Defendant" or "CIS") seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and common law unjust enrichment. This FAC is filed with the written consent of Defendant pursuant to Fed. R. Civ. P. 15(a)(2), and it relates back to the date of the original pleading pursuant to Fed. R. Civ. P. 15(c). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

### JURISDITION AND VENUE

1.     Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to Plaintiffs' and Class Members claims occurred within this judicial district. Plaintiffs and other Class Members performed work in this judicial district and were paid pursuant to Defendant's unlawful pay policy in this judicial district, and Defendant routinely conducts business in this judicial district.

## PARTIES

4. Plaintiff Eric Gundrum ("Gundrum") is a Nevada resident who was employed by CIS as a pipeline inspector in Kansas, Oklahoma, and Missouri between July 2013 and June 2014, and in Wisconsin and Illinois between June 2015 and October 2015. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. (Dkt. No. 1-1.)

5. Plaintiff Michael King ("King") is a Nevada resident who was employed by CIS as a pipeline inspector in Kansas, Oklahoma, and Missouri between July 2013 and April 2014, and in Wisconsin and Illinois between June 2015 and August 2015. Pursuant to 29 U.S.C. § 216(b), he has consented in writing to being a Plaintiff in this action. (Dkt. No. 1-2.)

6. Defendant Cleveland Integrity Services, Inc. ("Defendant" or "CIS") is a limited corporation providing third party inspection services for the construction and maintenance of oil and natural gas transmission, midstream and gathering lines, facility construction, meter runs and many other types of oil and gas construction throughout the United States. CIS is a subsidiary of Applied-Cleveland Holdings, Inc. ("Applied-Cleveland").

7. CIS is incorporated in Oklahoma and maintains its corporate headquarters in Cleveland, Oklahoma.

8. CIS employs inspectors, such as Plaintiffs, who perform a variety of inspection services on oil and gas pipelines for energy, public utility and pipeline companies. CIS' financial

results are driven by the number of inspectors performing services for CIS' customers and the fees that CIS charges the customers for these services.

9.     CIS charges its inspectors' services out to CIS' customers on a per project basis, including per diem charges for the inspectors, their mileage and other reimbursement items.

10.     CIS employed Plaintiffs and continues to employ similarly situated employees.

11.     CIS employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

12.     CIS' annual gross volume of business exceeds $500,000.

13.     CIS is not an independently owned and controlled local enterprise within the meaning of 29 U.S.C. § 207(b)(3).

## CLASS DEFINITIONS

14.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following group of potential FLSA opt-in litigants:

> All current or former employees of Cleveland Integrity Services, Inc. ("CIS"), who performed work in the United States at any time between January 1, 2015 and the present, and who held the job title of inspector or a similar title, except for individuals who held only jobs containing the word "Chief" (the "FLSA Collective").

15.     Plaintiffs bring Count II of this lawsuit for unjust enrichment as a multi-state class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All employees who have worked for Cleveland Integrity Services, Inc. ("CIS"), who performed work in the United States at any time between January 1, 2015 and the present, and who held the job title of inspector or a similar title, except for individuals who held only jobs containing the word "Chief"  (the "Unjust Enrichment Class").

16.     The FLSA Collective and the Unjust Enrichment Class are together referred to as the "Classes."

17.     Plaintiffs reserve the right to redefine the Classes prior to notice, and thereafter, as necessary.

## FACTS

18.     CIS employs members of the Classes throughout the United States.

19.     Between approximately July 2013 and June 2014, and between June 2015 and October 2015, Plaintiff Gundrum was employed as a pipeline inspector with CIS, performing and reviewing inspections on gas pipelines.

20.     Between approximately July 2013 and April 2014, and between June 2015 and August 2015, Plaintiff King was employed as a pipeline inspector with CIS, performing and reviewing inspections on gas pipelines.

21.     CIS employed Plaintiffs to inspect pipelines in and around Kansas, Missouri, Oklahoma on the Flanagan South Pipeline project

22.     CIS employed Plaintiffs to inspect pipelines in and around Wisconsin and Illinois on the Line 66 Pipeline project.

23.     Plaintiffs reviewed and aided colleagues in performing routine inspections of newly-laid pipes.  Plaintiffs observed other Class Members performing the same or substantially similar job duties.

24.     Plaintiffs and Class Members are all blue collar workers who are primarily engaged in manual labor duties.

25.     Plaintiffs' work required the utilization of techniques and procedures obtained primarily from industry manuals, standards and codes.  *See* 29 C.F.R. § 541.203(g).  Plaintiffs observed other Class Members utilizing similar techniques and procedures in the performance of their jobs.

26.     Plaintiffs worked within the closely prescribed limits provided by CIS.  *See* 29 C.F.R. § 541.203(g).  Plaintiffs observed other Class Members working in the same or substantially similar manner.

27.     CIS has a policy or practice of failing to compensate Plaintiffs and the Classes for all overtime hours worked.

28.     CIS paid Plaintiffs and the Classes pursuant to a daily rate compensation system that did not take into account all hours worked in a workweek or overtime hours.

29.     Specifically, CIS paid Plaintiffs and the Classes a specific set amount per each day that they worked.

30.     CIS does not maintain accurate records of all hours that Plaintiffs and the Classes worked each workday and the total number of hours worked each workweek as required by the FLSA.  *See* 29 C.F.R. § 516.2(a)(7).

31.     Plaintiffs routinely worked between six (6) days to seven (7) days per week and typically more than ten (10) hours per day, up to fifteen (15) hours.  Plaintiffs observed that the Class Members routinely worked similar schedules.

32.     CIS did not pay Plaintiffs and the Classes any overtime compensation for hours worked over forty (40) per workweek.

33.     In 2011, prior to the start of the relevant time period in this case, the United States Court of Appeals for the Tenth Circuit held that a similar compensation scheme by an oilfield services company was not only unlawful, but constituted a willful violation of the FLSA.  *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011).  Since *Mumby*, many oil and gas service companies have reclassified their daily rate workers to come into compliance with the FLSA.  CIS, however, has not done so.

34.     As a subsidiary of Applied-Cleveland Holdings, Inc., which services the oil and gas industry throughout the United States, there is no question that CIS has access to human resource expertise and legal counsel who can advise CIS on its FLSA compliance obligations.

35.     CIS has acted willfully and/or with reckless disregard of the applicable FLSA provisions, by failing to properly compensate Plaintiffs and the FLSA Collective for hours worked in excess of forty (40) during the workweek.

36.     Moreover, during the entire relevant time period, CIS was aware that members of the Classes were not properly compensated under the FLSA, because  timesheets clearly demonstrate that they were routinely working more than forty (40) hours per week (based on the number of days they were working) but were not receiving overtime compensation.

37.     Furthermore, CIS failed to properly track, monitor or record the actual number of hours per day that members of the Classes worked, as required by the FLSA.  *See* 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

## COLLECTIVE ACTION ALLEGATIONS

38.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

39.     Plaintiffs desire to pursue his FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

40.     Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to CIS' previously described common pay practices and, as a result of such practices, were not paid the full and legally

mandated overtime premium for hours worked over forty (40) during the workweek.  Resolution of this action requires inquiry into common facts, including, *inter alia*, CIS' common compensation, timekeeping and payroll practices.

41.     Specifically, CIS paid Plaintiffs and the FLSA Collective a set amount of pay per day, regardless of the number of hours worked, and failed to pay overtime as required by federal law.

42.     Further, CIS misclassified Plaintiffs and the FLSA Collective as exempt and failed to pay overtime as required by federal law.

43.     The similarly situated employees are known to CIS, are readily identifiable, and may be located through CIS' records, as well as the records of any payroll companies that CIS utilizes.  CIS employs many FLSA Collective Members throughout the United States.  These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

<u>**CLASS ACTION ALLEGATIONS**</u>

44.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Unjust Enrichment Class as defined above.

45.     The members of the Unjust Enrichment Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Unjust Enrichment Class.

46.     There are questions of law and fact common to the proposed Unjust Enrichment Class, which predominate over any questions affecting only individual Unjust Enrichment Class

members, including, without limitation, whether CIS has violated and continues to violate state common law through its policies and practice of not paying its employees overtime compensation.

47.     Plaintiffs' claims are typical of the claims of Unjust Enrichment Class members in the following ways, without limitation: (a) Plaintiffs are members of the Unjust Enrichment Class; (b) Plaintiffs' claims arise out of the same policies, practices, and course of conduct that form the basis of the claims of the Unjust Enrichment Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Unjust Enrichment Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and other Unjust Enrichment Class members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by other Unjust Enrichment Class members.

48.     Plaintiffs will fairly and adequately represent and protect the interests of the Unjust Enrichment Class because there are no conflicts between the claims of Plaintiffs and those of other Unjust Enrichment Class members, and Plaintiffs' claims are typical of the claims of the Unjust Enrichment Class. Plaintiffs' counsel is competent and experienced in litigating class actions and other complex litigation, including wage and hour cases like this one.

49.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Unjust Enrichment Class predominate over any questions affecting only individual Unjust Enrichment Class members.

50.     Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are expected to be encountered in the management of this class action

that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Unjust Enrichment Class are readily identifiable from CIS' own employment records. Prosecution of separate actions by individual members of the Unjust Enrichment Class would create the risk of inconsistent and varying adjudications with respect to individual Unjust Enrichment Class members that would establish incompatible standards of conduct for CIS.

51.    A class action is superior to other available methods for adjudication of this controversy because, without limitation: (a) joinder of all members is impractical; (b) the amounts at stake for many of the Unjust Enrichment Class members, while substantial, are not great enough to enable those Unjust Enrichment Class members to maintain separate suits against CIS; (c) it is desirable to concentrate the litigation of the Unjust Enrichment Class members' claims in the in this Judicial District because substantially all of the alleged wrongdoing took place in this District, Defendant's principle place of business is located in this District; and (d) the Unjust Enrichment Class members do not have special interests in individually controlling the prosecution of separate actions because the prosecution of Plaintiffs' claims will fairly and adequately protect the interests of the Unjust Enrichment Class members and Plaintiffs does not expect the litigation of individualized defenses or theories of recovery.

52.    Without a class action, CIS will retain the benefit of its wrongdoing, which will result in further damages to the Unjust Enrichment Class. Plaintiffs envision no difficulty in the management of this action as a class action.

### COUNT I
### Violation of the FLSA
### (On Behalf of the Plaintiffs and the FLSA Collective)

53.    All previous paragraphs are incorporated as though fully set forth herein.

54.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.  *See* 29 U.S.C. § 207(a)(1).

55.     The FLSA provides that, if an employee is paid a flat sum for a day's work or for doing a particular job, and if he receives no other form of compensation for services, the employee is entitled to extra half-time pay at his regular rate for all hours worked in excess of forty (40) in the workweek.  *See* 29 C.F.R. § 778.112.

56.     CIS' compensation scheme applicable to Plaintiffs and the FLSA Collective failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

57.     Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

58.     CIS knowingly failed to compensate Plaintiffs and the FLSA Collective at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

59.     During all relevant times, Plaintiffs and the FLSA Collective were covered employees entitled to the above-described FLSA protections.

60.     In violating the FLSA, CIS acted willfully and/or with reckless disregard of clearly applicable FLSA provisions.

### COUNT II
### Unjust Enrichment
### (On Behalf of the Unjust Enrichment Class)

61.     All previous paragraphs are incorporated as though fully set forth herein.

62.     This count is brought against CIS pursuant to the common law doctrine of unjust enrichment.

63.     CIS has received and benefited from the uncompensated labors of Plaintiffs and the Unjust Enrichment Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

64.     At all relevant times hereto, CIS devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiffs and the Unjust Enrichment Class without paying overtime compensation for all hours worked.

65.     Contrary to all good faith and fair dealing, CIS induced Plaintiffs and the Unjust Enrichment Class to perform work while failing to pay overtime compensation for all hours worked as required by law.

66.     By reason of having secured the work and efforts of Plaintiffs and the Unjust Enrichment Class without paying overtime compensation as required by law, CIS enjoyed reduced overhead with respect to its labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiffs and the Unjust Enrichment Class. CIS retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

67.     Accordingly, Plaintiffs and the Unjust Enrichment Class are entitled to judgment in an amount equal to the benefits unjustly retained by CIS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective and Unjust Enrichment Class, seek the following relief:

A.     An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

B.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

C.     An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Unjust Enrichment Class;

D.     Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

E.     Liquidated damages to the fullest extent permitted under the law;

F.     Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

G.     Such other and further relief as this Court deems just and proper.

Dated: July 10, 2017                      Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

filed on the ECF docket and is available for viewing and download on this 10th day of July, 2017.

s/ Shanon J. Carson
Shanon J. Carson