**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ERIC GUNDRUM and MICHAEL KING,** | : | |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | **Civil Action No.: 4:17-cv-00055-TCK-TLW** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CLEVELAND INTEGRITY** | : | |
| **SERVICES, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
<u>THE SETTLEMENT AGREEMENT</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL HISTORY .................................................................................. 3

III.  THE TERMS OF THE SETTLEMENT AGREEMENT .................................... 6

   A.  The Class Members .................................................................................... 6

   B.  Notice Of The Settlement To Class Members .......................................... 6

   C.  Calculation And Distribution Of The Gross Settlement Amount .............. 7

   D.  Release Of Claims ................................................................................... 10

   E.  Attorneys' Fees And Costs ...................................................................... 11

IV.  DISCUSSION ................................................................................................... 11

   A.  Applicable Legal Standard ...................................................................... 11

     1.  Legal Standard for Approval of FLSA Settlements .................................... 11

     2.  Legal Standard for Preliminary Approval of Rule 23 Class Action Settlement ......... 12

   B.  The Terms Of The Proposed Settlement Are Fair, Adequate And Reasonable Resolving A *Bona Fide* Dispute ......................................................................... 13

     1.  A *Bona Fide* Dispute Existed Between The Parties .................................... 13

     2.  The Proposed Settlement Is Fair And Reasonable ...................................... 18

   C.  The Service Awards Are Justified And Should Be Approved ....................................... 21

   D.  The Proposed Settlement Furthers The Purpose Of The FLSA ...................................... 23

   E.  The Court Should Preliminarily Certify The Rule 23 Settlement Class Under Fed. R. Civ. P. 23 ...................................................................... 24

     1.  The Class Is Sufficiently Numerous ............................................... 25

     2.  The Class Seeks Resolution of Common Questions ................................... 26

     3.  The Claims Of The Named Plaintiffs Are Typical Of Class ....................................... 26

     4.  Class Counsel And Plaintiffs Meet The Adequacy Requirements Of The Class ....... 27

5.      The Class Satisfies The Predominance And Superiority Requirements of Fed. R. Civ. P. 23(b)(3) ...................................................................................................................... 27

6.      The Multi-State Rule 23 Settlement Class Based On Common Law Is Appropriate For Class Certification ........................................................................................................... 28

F.   The Proposed Notice, Reminder Letter, And Reminder Script Provide Adequate Notice To The Class Members And Satisfy Due Process .................................................................... 29

G.      The Proposed Implementation Schedule........................................................................ 30

V.   CONCLUSION.................................................................................................................... 31

## **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Pages**

*Adamson v. Bowen,*
      855 F.2d 668 (10th Cir. 1988) ............................................................... 26

*Alewel v. Dex One Serv., Inc.,*
      No. 13–2312–SAC, 2013 WL 6858504 (D. Kan. Dec. 30, 2013) ........................................... 23

*Amchem Prods., Inc. v. Windsor,*
      521 U.S. 591 (1997)............................................................................ 25, 29

*Baker v. Vail Resorts Mgmt. Co.,*
      No. 13–cv–01649–PAB–CBS, 2014 WL 700096 (D. Colo. Feb. 24, 2014) ............... 13, 14, 18

*Barbosa v. Nat'l Beef Packing Co.,*
      No. 12-2311-KHV, 2015 WL 4920292 (D. Kan. Aug. 18, 2015)........................................... 12

*Bozak v. FedEx Ground Package Sys., Inc.,*
      No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014)................................................ 29

*Brock v. On Shore Quality Control Specialists, Inc.,*
      1987 WL 31308 (N.D. Tex. Sept. 29, 1987)............................................................ 15

*Brooklyn Sav. Bank v. O'Neil,*
      324 U.S. 697 (1945)............................................................................ 24

*Cellular Sales of Missouri, LLC v. NLRB,*
      824 F.3d 772 (8th Cir. 2016) ...................................................................... 16

*Chaverria v. New York Airport Serv., LLC,*
      875 F. Supp. 2d. 164 (E.D.N.Y. 2012) .............................................................. 19

*Craig v. Rite Aid Corp.,*
      No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ................................................ 22

*Creed v. Benco Dental Supply Co.,*
      No. 3:12-CV-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013)........................................ 23

*D.R. Horton v. NLRB,*
      737 F.3d 344 (5th Cir. 2013) ...................................................................... 16

*DG v. Devaughn,*
      594 F.3d 1188 (10th Cir. 2010) .................................................................... 26

*Fenley v. Wood Grp. Mustang, Inc.,*
      170 F. Supp. 3d 1063 (S.D. Ohio 2016) ............................................................ 14

*Franco v. Ruiz Food Products, Inc.*,
     No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................... 19

*Frank v. Eastman Kodak Co.*,
     228 F.R.D. 174 (W.D.N.Y. 2005).......................................................................................... 22

*Gambrell v. Weber Carpet, Inc.*,
     No. 10-2131-KHV, 2011 WL 3518172 (D. Kan. Aug. 11, 2011) .......................................... 23

*Gianzero v. Wal–Mart Stores, Inc.*,
     No. 09–cv–00656–REB–BNB, 2010 WL 1258071 (D. Colo. Mar. 29, 2010)........................ 25

*Gonzales v. City of Albuquerque*,
     No. CIV 09-0520, 2010 WL 4053947 (D.N.M. 2010) .......................................................... 25

*Hoving v. Lawyers Title Ins. Co.*,
     256 F.R.D. 555 (E.D. Mich. 2009) ...................................................................................... 28

*Hughes v. Gulf Interstate Field Servs., Inc.*,
     No. 2:14-cv-000432, 2015 WL 4112312 (S.D. Ohio July 7, 2015) ...................................... 14

*Hughes v. Gulf Interstate Field Servs., Inc.*,
     No. 2:14-cv-000432, 2016 WL 4197596 (S.D. Ohio Aug. 8, 2016) ...................................... 15

*In Re Abbott Labs. Norvir Anti–Trust Litig.*,
     Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. 2007) .......................... 29

*In re Am. Bank Note Holographics, Inc.*,
     127 F.Supp.2d 418 (S.D.N.Y.2001)...................................................................................... 19

*In re Buspirone*,
     185 F.Supp.2d 363 (S.D.N.Y. 2002)..................................................................................... 28

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................................... 29

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
     No. 06–3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009).................................................. 23

*In re LILCO Secs. Litig.*,
     111 F.R.D. 663 (E.D.N.Y.1986) .......................................................................................... 28

*In re Pharm. Indus. Average Wholesale Price Litig.*,
     233 F.R.D. 229 (D. Mass. 2006)........................................................................................... 29

*In re Relafen Antitrust Litig.*,
     221 F.R.D. 260 (D. Mass. 2004)........................................................................................... 29

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004) ........................................................ 29

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) .............................................. 25, 27

*Karic v. Major Auto. Co., Inc.*,
   No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) .................................. 23

*Kingsberry v. Chicago Title Ins. Co.*,
   258 F.R.D. 668 (W.D. Wash. 2009) ................................................ 29

*Lazarin v. Pro Unlimited Inc.*,
   No. C11–03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ..................................... 19

*Leverage v. Traeger Pellet Grills, LLC*,
   No. 16-cv-00784-KAW, 2017 WL 2797811 (N.D. Cal. June 28, 2017) ................................. 19

*Lewis v. Epic Sys. Corp.*,
   823 F.3d 1147 (7th Cir. 2016) ...................................................... 4, 16

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ................................................... 13, 19

*Lynn's Food Stores. Inc. v. U.S.*,
   679 F.2d 1350 (11th Cir. 1982) .................................................... 11, 13

*McCaffrey v. Mortg. Sources, Corp.*,
   No. 08–2660–KHV, 2010 WL 4024065 (D. Kan. Oct. 13, 2010) ........................................ 24

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) ................................................................... 17

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ..................................... 23

*Mills v. Capital One, N.A.*,
   No. 14 Civ.1937(HBP), 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ................................. 19

*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016) ....................................................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................. 29

*Murphy Oil USA, Inc. v. NLRB.*,
   808 F.3d 1013 (5th Cir. 2015) ...................................................... 16

*Nesbitt v. FCNH, Inc.*,
    811 F.3d 371 (10th Cir. 2016) ........................................................................ 16

*Nur v. Tatitlek Support Servs., Inc.*,
    No. 15-CV-00094 SVW (JPRx), 2016 WL 3039573 (C.D. Cal. Apr. 25, 2016) ..................... 19

*O'Dell v. Alyseka Pipeline Serv. Co.*,
    856 F.2d 1452 (9th Cir. 1988) ........................................................................ 15

*Pliego v. Los Arcos Mexican Rests., Inc.*,
    313 F.R.D. 117 (D. Colo. 2016) ..................................................................... passim

*Powers v. Lycoming Engines*,
    245 F.R.D. 226 (E.D. Pa. 2007) ...................................................................... 29

*Raniere v. Citigroup, Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ..................................................................... 23

*Rhodes v. Olson Assoc., P.C.*,
    308 F.R.D. 664 (D. Colo. 2015) .................................................................. 12, 13

*Riedel v. Acqua Ancien Bath New York LLC*,
    No. 14 Civ. 7238 (JCF), 2016 WL 3144375 (S.D.N.Y. May 19, 2016)............................. 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ................................................................. 18, 27

*Sand v. Greenberg*,
    No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011)..................................... 22

*Schumacher v. Tyson Fresh Meats, Inc.*,
    221 F.R.D. 605 (D.S.D. 2004) ........................................................................ 29

*Singer v. AT & T Corp.*,
    185 F.R.D. 681 (S.D. Fla. 1998)...................................................................... 29

*Sloane v. Gulf Interstate Servs., Inc.*,
    No. 4:16-cv-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2107) ............................... 14

*Solis v. Top Brass, Inc.*,
    No. 14-cv-00219-KMT, 2014 WL 4357486 (D. Colo. Sept. 3, 2014) ............................. 14, 18

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004)........................................................................ 28

*Swartz v. D-J Eng'g, Inc., No. 12-CV-01029-DDC-K*,
    GG, 2016 WL 633872 (D. Kan. Feb. 17, 2016) ............................................... 12, 18

*Tommey v. Comput. Sci. Corp.*,
No. 11–CV–02214–EFM, 2015 WL 1623025 (D. Kan. Apr. 13, 2015) ................................. 12

*Trevizo v. Adams*,
455 F.3d 1155 (10th Cir. 2006) ........................................................................................ 25, 26

*Tripp v. Rabin*,
No. 14-CV-2646-DDC-GEB, 2016 WL 3615572 (D. Kan. July 6, 2016) ........................ 12, 13

*Tuten v. United Airlines, Inc.*,
41 F. Supp. 3d 1003 (D. Colo. May 19, 2014) ................................................................. 12, 23

*UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Min. Corp.*,
352 Fed. Appx. 232 (10th Cir. 2009) ..................................................................................... 21

*Wade v. Werner Trucking Co.*,
No. 10 Civ. 270, 2014 WL 2535226 (S.D. Ohio June 5, 2014).............................................. 29

*Young v. Tri Cnty. Sec. Agency, Inc.*,
No. 13-cv-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014)................................................. 21

*Zubair v. EnTech Eng'g P.C.*,
808 F. Supp. 2d 592 (S.D.N.Y. 2011)..................................................................................... 15

*Zuber v. APC Natchiz, Inc.*,
144 F. App'x 657 (9th Cir. 2005) ........................................................................................... 15

## Statutes, Rules & Regulations

29 U.S.C. § 202........................................................................................................................ 24

29 U.S.C. § 216(b) ..................................................................................................................... 4

29 U.S.C. § 255(a) ................................................................................................................... 17

29 U.S.C. §§ 201 ........................................................................................................................ 1

29 C.F.R. § 541.200 ................................................................................................................. 15

29 C.F.R. § 541.604(b) ............................................................................................................ 14

29 C.F.R. § 778.112 ................................................................................................................. 14

Fed. R. Civ. P. 23 ............................................................................................................... passim

Fed. R. Civ. P. 23(a) .......................................................................................................... passim

Fed. R. Civ. P. 23(b)(3)................................................................................................. 24, 25, 27

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 30

Fed. R. Civ. P. 23(e) ................................................................................................... 12

**<u>Other Authorities</u>**

Restatement (Third) of Restitution and Unjust Enrichment § 1 .................................... 28

## I.   <u>INTRODUCTION</u>

This class and collective action wage and hour lawsuit against Defendant Cleveland Integrity Services, Inc. ("Defendant" or "CIS") has been settled following an extensive ADR and mediation process, and Plaintiffs Eric Gundrum and Michael King ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.

This case alleges that CIS has a policy and practice of failing to pay its Inspectors any overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and common law unjust enrichment. CIS denies all of the allegations in the lawsuit. After this case was filed in the United States District Court for the Western District of Wisconsin, the Parties briefed several issues, including Defendant's request that the case be transferred to this Court based on its employment arbitration and venue agreement, and Plaintiffs' request that the Court issue notice and conditionally certify a collective action. Following transfer of this case to this Court, the Parties agreed to an Alternative Dispute Resolution ("ADR") process, during which they exchanged substantial settlement-related discovery, and engaged in extensive arm's-length settlement negotiations. After considerable negotiations, including a full-day, in-person mediation session with experienced mediator Honorable Wayne R. Andersen (Ret.) of JAMS in Chicago, Illinois (Judge Andersen formerly served as a United States District Judge for the Northern District of Illinois for 19 years and as a state court trial judge for 7 years), and further negotiations thereafter, the Parties were able to reach a class settlement of this matter. *See* Declaration of Shanon J. Carson ("Carson Decl.") ¶¶ 6-8 (attached as Exhibit 1). The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Agreement") (attached as Exhibit 2).

The Settlement includes a gross cash payment of Four Million and Five Hundred Thousand

Dollars ($4,500,000.00) (the "Gross Settlement Amount"). Agreement ¶ 3. Upon the Court granting final approval, every Eligible Class Member[1] will promptly receive a Settlement Award check that provides compensation for the weeks when they performed work for CIS and were paid a day rate during the relevant time period. Agreement ¶ 4(b).

In exchange, the Settlement Agreement contains a release of all wage and hour claims by the eligible Settlement Class Members against CIS, and all of their past and present parent companies, investors in any of these companies, owners, controlling persons, subsidiaries, affiliates, shareholders, directors, officers, employees, insurers, reinsurers, attorneys and agents, which arise under the FLSA, state statutory law (excluding workers' compensation laws, unemployment compensation laws, and discrimination laws), or common law (*e.g.*, unjust enrichment, *quantum meruit*, etc.) concerning their compensation, hours of work, pay for those hours of work, or payroll practices through the date of the Court's Approval Order. Agreement ¶ 6. Importantly, Class Members who do not sign, deposit, or cash their check will not release any of their claims against CIS. Agreement ¶¶ 7, 13.

The Settlement Agreement provides an excellent settlement for Class Members with respect to their claims for allegedly unpaid wages and overtime arising from CIS's alleged improper wage and hour practices at issue, **especially when taking into consideration CIS's arbitration agreements, and the possibility that the Litigation, if not settled now, would very possibly result in no recovery for Class Members or a recovery that was much less favorable**. *See* Carson Decl. ¶ 9. Plaintiffs respectfully submit that this motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval and falls squarely within

---

[1] Eligible Class Member means Plaintiffs, the five Opt-In Plaintiffs, and those who do not exclude themselves from the settlement by timely opting out. *See* Agreement ¶ 4.

the range of reasonableness.

Accordingly, Plaintiffs request that the Court issue an order: 1) granting preliminary approval of the Settlement Agreement; 2) preliminarily certifying the Rule 23 Settlement Class pursuant to Fed. R. Civ. P. 23 for purposes of settlement; 3) preliminarily appointing Plaintiffs Gundrum and King as Class Representatives; 4) preliminarily approving Berger & Montague, P.C. as Class Counsel; 5) approving Dahl Administration LLC as the Settlement Administrator and preliminarily approving the costs of administration; 6) approving the Notice to the Settlement Class Members; and 7) approving the proposed schedule and procedure for the final approval of the Settlement Agreement. Defendant consents to this Motion and all relief requested.

## II.   PROCEDURAL HISTORY

On June 2, 2016, Plaintiffs filed their Collective Action Complaint ("Complaint") in the U.S. District Court for the Western District of Wisconsin alleging that CIS violated the FLSA by paying them and similarly situated employees on an unlawful daily rate compensation plan without paying overtime when they worked over forty hours per week. *See* Compl. ¶¶ 27, 30 (Dkt. No. 1).[2]

On June 27, 2016, Plaintiffs filed an Expedited Motion for Conditional Certification and

---

[2] In fact, Class Counsel have been involved in litigation with CIS over the matters at issue in this litigation for over two years. Prior to the commencement of this litigation, Class Counsel and CIS were involved in a prior action alleging the same alleged class-wide violations of the FLSA. The original Complaint in *Albee v. Cleveland Integrity Servs., Inc.*, No. 2:15-cv-09149 (D. Kan.), was filed on July 1, 2015. On September 22, 2015, CIS moved to stay or dismiss and compel arbitration. In response, the plaintiff voluntarily dismissed his Complaint on October 19, 2015, and filed a collective action arbitration demand with the American Arbitration Association on behalf of himself and those similarly situated. Rather than answer the arbitration demand, on October 30, 2015, CIS filed an action for declaratory judgment in the District of Kansas seeking to have that Court hold that even though the Arbitration Agreement was silent on the issue of pursing class and collective actions, that employees were prohibited from doing so. The plaintiff filed a motion to dismiss the declaratory judgment on December 29, 2015. The matters between this plaintiff and CIS ultimately were not resolved by the District of Kansas as a result of an individual settlement. While this case is not relevant to the Settlement now before the Court, it does highlight some of CIS' alleged defenses to this case were the Settlement to not be approved.

to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) ("Notice Motion"), seeking to conditionally certify and send notice of this action to a group of similarly situated Inspectors who were paid pursuant to CIS's daily rate pay policy. (Dkt. No. 6.) CIS responded to the Notice Motion on August 29, 2016. (Dkt. No. 39.)

On July 25, 2016, CIS filed a Motion to Transfer the action to the U.S. District Court for the Northern District of Oklahoma. (Dkt. No. 18.) Defendant argued that because the Arbitration Agreement signed by Plaintiffs Gundrum and King contained a purported forum selection clause designating Cleveland, Oklahoma as the site for an arbitration hearing, the case must be transferred to the Northern District of Oklahoma. Plaintiffs filed an opposition to CIS's Motion to Transfer, arguing, among other things, that CIS's Arbitration Agreement is unenforceable under *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016) and related cases, which hold that an arbitration agreement that contains a prohibition on collective actions violates Section 7 of the National Labor Relations Act ("NLRA"), is illegal, and therefore unenforceable under Section 4 of the Federal Arbitration Act. On January 31, 2017, the Court granted CIS's Motion to Transfer, addressing only the forum selection clause issue. (Dkt. No. 51.) The legality and enforceability of an arbitration agreement that contains a prohibition on class and collective actions is currently pending before the U.S. Supreme Court, with oral argument expected during the October 2017 term. *See Epic Sys. Corp. v. Jacob Lewis*, No. 16-285 (S. Ct.).

Additionally, on July 5, 2016, Plaintiff Gundrum filed a charge against CIS with the National Labor Relations Board ("NLRB") seeking a decision from the NLRB declaring that CIS has interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the NLRA. On October 27, 2016, the Acting Regional Director of the NLRB Region 30 made a determination finding merit to Plaintiff Gundrum's charge and asserting that CIS has

been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act through attempting to enforce its Arbitration Agreement.

On February 15, 2017, the Parties submitted a Joint Motion to Stay the Case in order to engage in ADR (Dkt. No. 62), and on February 23, 2017, the Court approved the stipulation and stayed the case until April 14, 2017 (Dkt. No. 66). In connection with their ADR process, the Parties agreed to exchange settlement-related discovery so that they could engage in meaningful, good faith and informed settlement discussions. Specifically, CIS agreed to and did produce a database containing the compensation received and the number of days worked by all potential Class Members. Plaintiffs agreed to and did produce a detailed damages analysis, and the parties exchanged detailed mediation statements identifying their legal and factual positions and analyses.

On March 21, 2017, the Parties participated in a full-day, in-person mediation session in Chicago, Illinois before an experienced mediator:  retired U.S. District Judge Wayne R. Andersen. In preparation for the mediation with Judge Andersen, the Parties prepared comprehensive damages analyses and detailed mediation statements. The Parties made substantial progress toward reaching a settlement at the mediation (including reaching an agreement on the Gross Settlement Amount), and continued to engage in settlement negotiations in the following months concerning the specific terms and conditions of a Settlement Agreement. As a result of the mediation and subsequent arm's-length negotiations, the Parties have agreed to the proposed Settlement Agreement that is now before the Court for approval.

The Settlement offers significant advantages over the continued prosecution of this case. Specifically, Class Members will receive substantial and immediate financial compensation for their unpaid overtime and will avoid the risks inherent in the continued prosecution of this case in

which CIS would assert various defenses to its liability, including enforcement of its arbitration agreements. Carson Decl. ¶ 9. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all Class Members are provided with notice of the Settlement Agreement and its terms. *Id.* at ¶ 10.  Further, as part of the Settlement Agreement, Plaintiffs filed a First Amended Complaint on July 10, 2017 to include a Rule 23 class premised on unjust enrichment claims. (Dkt. No. 86.)

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.     The Class Members

The Settlement Agreement provides that the Class Members include "[a]ll employees who worked for CIS in the job title of inspector and who were paid on a daily rate basis in any workweeks between January 1, 2015 and March 31, 2017, except for individuals who held only jobs containing the word 'Chief'" (the "Class" or "Class Members"). Agreement ¶ 1. While CIS asserts that if this case were to be litigated, class and collective action treatment under the FLSA or Rule 23 would be inappropriate, CIS agrees that, for settlement purposes only, the collective and class action may be certified pursuant to the FLSA and Rule 23. Agreement ¶ 1. CIS has identified approximately 2,300 Class Members. Each Class Member will be fully advised of this class action settlement with the Notice of Settlement that is attached to the Agreement as Exhibit A. *Id.*, Ex. A.

### B.     Notice Of The Settlement To Class Members

The Agreement provides what Plaintiffs believe is the fairest and most practicable procedure for notifying Class Members of the terms of the Settlement and their respective rights and obligations – U.S. First Class Mail *and email*. Under the terms of the Agreement, within ten (10) business days after the Court's Preliminary Approval Order, CIS will provide the Settlement Administrator with a list setting forth for all Class Members their names, last known addresses,

last known telephone numbers, last known email addresses, and social security numbers. Agreement ¶ 8. To provide the best notice practicable, before mailing the Notice of Settlement, the Settlement Administrator will run the list of Class Members through the U.S. Postal Service's National Change of Address database ("NCOA"). *Id.* Within fifteen (15) business days after the Court's Preliminary Approval Order, the Settlement Administrator will mail and email the Court-Approved Notice of Settlement and Claim Form to Class Members. The Settlement Administrator is authorized to use reasonable devices to obtain forwarding addresses after the initial mailing and will resend notices to those forwarding addresses. *Id.*

Each Class Member will have sixty (60) days from the initial mailing of the Notice of Settlement to submit a Claim Form, request for exclusion (opt-out), or objection to the Settlement. *Id.* ¶ 8, Ex. B (Claim Form). The Settlement Administrator will send a reminder notice by First Class Mail *and email* thirty (30) days before the end of the claim period. *Id.* ¶ 8, Ex. C (Reminder Notice). Claim Forms may be returned by first class mail, email, facsimile, or via an electronic signature service that will be established in such a manner that the electronic Claim Forms will be delivered directly to the Settlement Administrator, and will not be accessed by Class Counsel. *Id.*

### C.      Calculation And Distribution Of The Gross Settlement Amount

Pursuant to the Agreement, CIS will wire the Gross Settlement Amount ($4,500,000.00) to the Settlement Administrator within ten (10) business days after the expiration of the time to file appeals concerning the final approval of the settlement, or within ten (10) business days after the resolution of any filed appeals, whichever date is later. *Id.* ¶ 10. Upon receipt by the Settlement Administrator, these funds shall be transferred immediately into a Qualified Settlement Fund. The Qualified Settlement Fund will be administered by a Court-appointed Settlement Administrator, Dahl Administration, LLC, an independent and experienced claims administration company.

The Gross Settlement Amount includes amounts to cover: (1) service awards to Plaintiffs

Eric Gundrum and Michael King in the amount of $20,000 each for their efforts in bringing and

prosecuting this matter; (2) service awards of $2,500 to each of the five Opt-In Plaintiffs (Donnie

Hood, Eric Malone, Christopher Teague, Erasmo Enriquez, and Jacob Carlson); (3) the payment

of attorneys' fees in the amount of up to one-third (1/3) of the Gross Settlement Amount, that will

compensate Class Counsel for all work performed in the litigation to date plus all work remaining

to be performed, including but not limited to, securing Court approval of the Settlement, making

sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of

the Action; (4) the payment of out-of-pocket costs incurred by Class Counsel, which are

anticipated not to exceed $25,000; (5) the Settlement Administrator's costs of the settlement

administration; and (6) CIS's share of payroll taxes on that part of the net settlement funds that are

attributable to wages. *Id.* ¶ 3.

After subtracting these amounts from the Gross Settlement Amount, the balance of the

funds ("Net Settlement Amount") shall be apportioned among all Class Members. *Id.* ¶ 4. Awards

to Class Members will be made from the Net Settlement Amount. Each Class Member is treated

the same for the purpose of calculating individual Settlement Awards. Each Class Member shall

receive a settlement award calculated using the following objective formula:

> a.    First, each Eligible Class Member will receive a minimum settlement amount of
> $350, regardless of whether or not he/she returns a timely Claim Form. If fewer
> than 35% of Eligible Class Members return a timely Claim Form, the minimum
> settlement amount shall be increased to $500. If fewer than 20% of Eligible Class
> Members return a timely Claim Form, the minimum settlement amount shall be
> increased to $600.[3] The applicable minimum amount for Eligible Class Members
> shall be set aside from the Net Settlement Amount prior to the determination of *pro
> rata* individual shares for Eligible Class Members who return timely Claim Forms
> or who previously opted in to the litigation, so that each Eligible Class Member

---

[3] If more than five percent (5%) of Class Members timely opt out of this settlement, or if less than
10% of Eligible Class Members return a Claim Form, CIS -- at its sole option – may (but is not
obligated to) withdraw from and nullify this Settlement by providing notice within five business
days from the date it is notified of either occurrence by the Settlement Administrator. *Id.* ¶ 9.

receives their minimum amount.

b.      Each Eligible Class Member who return timely Claim Forms or who previously opted in to the case will receive settlement shares which equal the total number of work weeks in which he/she worked in a qualifying position for CIS (*i.e.*, held the job title of inspector -- excluding job titles with the word 'Chief'-- and who were paid on a daily rate basis) during the period three years before he/she opted into this litigation, either by filing an Opt-In Consent Form or a Claim Form and March 31, 2017. Eligible Class Members who do not submit a Claim Form or did not opt into the settlement shall not be entitled to any settlement shares, and shall receive only the applicable minimum amount as set forth in subparagraph a, above.

c.      The total number of settlement shares shall be added together and the resulting sum divided by the Net Settlement Fund (less the allocation in subparagraph a, above and the employer share of payroll taxes) to reach a per share dollar figure. That figure will then be multiplied by each individual's number of settlement shares, and added to the applicable minimum amount set aside in subparagraph a to determine the applicable Settlement Award.

Settlement Award determinations and inclusion in the Settlement Class are based on CIS's personnel and payroll records. *Id.* ¶ 4.

Forty (40%) percent of each Class Member's settlement share will be treated as back wages subject to withholding taxes and reported on a W-2, and the remaining sixty (60%) percent of each settlement share will be treated as non-wage interest and/or damages or liquidated damages, will be reported on an IRS Form 1099, and will not be subject to withholding taxes. *Id.* ¶ 5. The Settlement Administrator will effectuate federal and applicable state income and other employment tax withholding as required by law with respect to that forty percent that will be treated as back wages, and the Settlement Administrator will pay all required withholding taxes and other payroll taxes (including unemployment insurance taxes) to the appropriate governmental authorities. *Id.* ¶ 5.

Settlement Award checks issued by the Settlement Administrator will be negotiable for one-hundred eighty (180) days from the date they are issued. *Id.* ¶ 12. The Settlement Award checks will be accompanied by a cover letter stating the check-cashing deadline. *Id.* Pursuant to

the terms of the Agreement, when ninety (90) days of the 180-day check-cashing period has expired, the Settlement Administrator will mail and email a reminder to any Class Members who have not yet cashed their checks to inform them of the 180-day deadline. Agreement ¶ 12. During the last forty-five (45) days of the 180-day check-cashing period, the Settlement Administrator will call Class Members who have not yet cashed their checks following the basic script attached to the Settlement Agreement as Exhibit F. *Id.*

The Settlement Administrator will maintain copies of all negotiated checks and will prepare and file a declaration with the Court (which may be filed under seal with the Court's permission to protect against future retaliation) at the conclusion of the 180-day check-cashing period listing the names (but, for their privacy, no other identifying information) of all Class Members who signed, deposited and/or cashed their settlement checks. *Id.* ¶ 12.

If at the conclusion of the 180-day period, Class Members have not signed, deposited and/or cashed their settlement checks, then the total amount of the uncashed checks (and the corresponding withholdings and payroll taxes attributable to those uncashed checks) will be remitted by the Settlement Administrator to CIS within ten (10) business days after that deadline, in recognition that CIS is not receiving any release from Class Members who do not sign, deposit, and/or cash their settlement checks. *Id.* ¶ 13.

### D.   <u>Release Of Claims</u>

In exchange for the Settlement benefits, Class Members who sign, deposit, and/or cashes their settlement checks shall release:

> all claims, both and unknown, of Plaintiffs, the Opt-in Plaintiffs, and the Settlement Class  through the date of the Court's preliminary approval order that arise out of their employment with CIS under the Fair Labor Standards Act ("FLSA"), state statutory law (excluding workers' compensation laws, unemployment compensation laws, and discrimination laws), or common law (*e.g.*, unjust enrichment, quantum meruit, etc.) concerning their compensation, hours of work, pay for those hours of work, or CIS's payroll practices.

*Id.* ¶ 6. The release covers CIS and its past and present parent companies, investors in any of those companies, owners, controlling persons, subsidiaries, affiliates, shareholders, directors, officers, employees, insurers, reinsurers, attorneys and agents (collectively, the "Released Parties") through the date of the Court's preliminary approval of the Settlement Agreement. *Id.* ¶¶ 6-7. In addition, and as further consideration for their service awards, Plaintiffs Gundrum and King and the Opt-In Plaintiffs will provide a general release to the Released Parties. *Id.* ¶ 7.

E.      **Attorneys' Fees And Costs**

Pursuant to the Settlement Agreement, Class Counsel's attorneys' fees shall not exceed one-third (1/3) of the Gross Settlement Amount that will compensate Class Counsel for all work performed in this lawsuit as well as all of the work remaining to be performed, including but not limited to securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. *Id.* ¶ 3. In addition, the Settlement Agreement provides that Class Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court not to exceed $25,000. *Id.* ¶ 3.

IV.     **DISCUSSION**

Plaintiffs respectfully request that the Court enter the accompanying proposed Order preliminarily approving the Settlement. CIS does not oppose this Motion.

A.      **Applicable Legal Standard**

1.      **Legal Standard for Approval of FLSA Settlements**

The standard for approval of an action arising under the FLSA requires only a determination the proposed settlement is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127-125 (D. Colo. 2016) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). To

approve a FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; (2) the proposed settlement is fair and equitable to all parties; and (3) any enhancement payments are fair and reasonable. *Swartz v. D-J Eng'g, Inc.*, No. 12-CV-01029-DDC-KGG, 2016 WL 633872, at *3 (D. Kan. Feb. 17, 2016) (citing *Tommey v. Comput. Sci. Corp.*, No. 11–CV–02214–EFM, 2015 WL 1623025, at *2 (D. Kan. Apr. 13, 2015); *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015)).

Here, the proposed Settlement falls well within the range of approval because it meets each requirement of substantive and procedural fairness. In addition, it meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt its reasonableness.

### 2.       Legal Standard for Preliminary Approval of Rule 23 Class Action Settlement

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) outlines a two-step process by which district courts first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *See Tripp v. Rabin,* No. 14-CV-2646-DDC-GEB, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016); *Rhodes v. Olson Assoc., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015); *see also* MANUAL FOR COMPLEX LITIG. (THIRD) § 30.41.

Plaintiffs now seek preliminary approval pursuant to Fed. R. Civ. P. 23(e). "[The] presumption in favor of voluntary settlement agreements is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. May 19, 2014). A class settlement is entitled to a presumption of fairness, adequacy, and reasonableness when the

settlement is reached through arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42, at 238.

The standard for approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Pliego*, 313 F.R.D. at 128. "Because preliminary approval is just the first step, courts apply a 'less stringent' standard than that at final approval." *Tripp*, 2016 WL 3615572 at *2; *see also Rhodes*, 308 F.R.D. at 666; MANUAL, § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.")).

### B.     The Terms Of The Proposed Settlement Are Fair, Adequate And Reasonable Resolving A *Bona Fide* Dispute

The Settlement meets the standard for approval under both the FLSA and Rule 23. To approve the Agreement, the Court must find that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Baker v. Vail Resorts Mgmt. Co.*, No. 13–cv–01649–PAB–CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

### 1.     A *Bona Fide* Dispute Existed Between The Parties

Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute." 679 F.2d at 1354. "Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists", such as, among others, a description of the dispute, plaintiff's justification for the unpaid wages, and the employer's justification for disputing the

overtime wages. *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *2 (D. Colo. Sept. 3, 2014) (citing *Baker*, 2014 WL 700096, at *1).

In their Complaint, Plaintiffs alleged CIS's compensation practices of paying its Inspectors a set day rate without taking into account the number of hours actually worked during a workweek or paying overtime compensation for all hours worked over forty. Compl. ¶¶ 25, 28-29, 32. CIS denies the allegations and asserted numerous defenses it believes would defeat Plaintiffs' claims in whole or in part.  If Plaintiffs succeeded in certifying this case as a class or collective action[4] and prevailed on liability, CIS would be faced with a substantial monetary verdict, as well as an obligation to pay legal fees and costs incurred by Plaintiffs to prosecute the case. If CIS prevailed, then Plaintiffs and Class Members would obtain no recovery. The risk is substantial on both sides.

The heart of this case involves the question of whether CIS paid Plaintiffs and Collective members pursuant to a day rate, in which overtime would be owed pursuant to 29 C.F.R. § 778.112 (employee paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job), or whether CIS met the applicable salary basis test because its pay plan satisfied 29 C.F.R. § 541.604(b), whereby an employer may pay on a day rate basis if  "[1] the employment arrangement also includes a guarantee of at least the minimum weekly required amount [$455] paid on a salary basis regardless of the number of … days … worked, and [2] a reasonable relationship exists between the guaranteed amount and the amount

---

[4] While Plaintiffs believe their arguments for conditional certification are strong, conditional certification in day rate inspector cases under the FLSA is not a guarantee, let alone maintaining certification through trial. *Compare Sloane v. Gulf Interstate Servs., Inc.*, No. 4:16-cv-01571, 2017 WL 1105236, at *1 (M.D. Pa. Mar. 24, 2107) (denying Plaintiffs' second motion for conditional certification of day rate inspectors); *and Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2015 WL 4112312, at *1 (S.D. Ohio July 7, 2015) (limiting conditional certification to one project); *with Lopez v. STS Consulting Servs., LLC*, No. 6:16-cv-00246 (E.D. Tex.) (Dkt. No. 64.) (conditionally certifying nationwide FLSA collective of day rate pipeline inspectors); *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1078 (S.D. Ohio 2016) (same).

actually earned." While Plaintiffs contend that CIS's pay plan did not satisfy the salary basis test, the issue constitutes a *bona fide* dispute between the parties. For example, in another recent case involving the inspection industry, the district court granted summary judgment to the employer based on its interpretation of the specific facts in that case, finding that the employer satisfied the salary basis test based on its day rate play plan. *See Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-000432, 2016 WL 4197596, at *4 (S.D. Ohio Aug. 8, 2016). Plaintiffs contend that the case was wrongly decided, and it is currently on appeal to the Sixth Circuit, *see* No. 2:14-cv-000432, ECF Nos. 133-34, Notice of Appeal, (Feb. 6, 2017), but the risk of continuing with litigation is real, and not insignificant.

Moreover, CIS also has argued that Plaintiffs' job duties satisfied the requirements of the administrative exemption. To meet the administrative exemption, CIS must demonstrate that, in addition to paying on a salary basis, Inspectors' primary duties are:

(1) "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and

(2) whose primary duty includes the exercise of "discretion and judgment" with respect to matters of significance.

29 C.F.R. § 541.200. While Plaintiffs dispute that their job duties qualify for such an exemption, the question is not without risk.[5] The Parties also disagree concerning whether Plaintiffs are blue or white collar workers, subject to the so called "white collar" exemption. *See* U.S. Dep't of Labor, "Fact Sheet #171: Blue-Collar Workers and the Part 541 Exemptions Under the Fair Labor

---

[5] Compare *Zuber v. APC Natchiz, Inc.*, 144 F. App'x 657 (9th Cir. 2005) (pipeline safety inspector was non-exempt as a matter of law); and *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 592, 595 (S.D.N.Y. 2011) (holding that chief inspector whose job responsibilities "included testing concrete and paint samples and recommending project improvements to the overall paint systems" was not exempt under the highly compensated employee exemption to the FLSA); *with Brock v. On Shore Quality Control Specialists, Inc.*, 1987 WL 31308 (N.D. Tex. Sept. 29, 1987) (inspectors found to be exempt); and *O'Dell v. Alyseka Pipeline Serv. Co.*, 856 F.2d 1452 (9th Cir. 1988) (same).

Standards     Act     (FLSA)     (Rev.     Jul.     2008)     (available     at

https://www.dol.gov/whd/overtime/fs17i_blue_collar.pdf) (administrative, executive and highly

compensated exemptions provided by FLSA Section 13(a)(1) and related state law provisions do

not apply to "blue-collar" workers, no matter how highly paid they might be.).

 In addition, CIS also argues that the arbitration agreements that Class Members signed

would preclude them from participating in a class or collective action were this case to continue

being litigated. Plaintiffs believe this would violate the NLRB, and the issue is currently pending

before the U.S. Supreme Court. Courts in the Seventh and Ninth Circuits have invalidated

arbitration agreements that unlawfully restrain current and former employees from pursuing

collective actions, although the Tenth Circuit had not ruled on the issue and there is a Circuit split

with the Fifth and Eighth Circuits.[6] While Plaintiffs believe that CIS's arbitration agreement is

substantively unconscionable, *see Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016), there is

no guarantee that a Court or arbitrator would agree. If individual arbitration were eventually

compelled, it is extremely likely that Class Members who are otherwise receiving a substantial

benefit from this Settlement may never be notified of their rights and would receive nothing. This

issue was a material factor in the Parties' settlement negotiations, and CIS's agreement for this

case to proceed on a class-wide basis for settlement purposes offers a significant benefit to Class

Members in light of the arbitration agreements that they may not have otherwise been able to

obtain.

 During their settlement negotiations, the Parties exchanged data regarding all Class

---

[6] *Compare Lewis*, 823 F.3d at 1151; *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016); *with D.R. Horton v. NLRB*, 737 F.3d 344 (5th Cir. 2013); *Murphy Oil USA, Inc. v. NLRB.*, 808 F.3d 1013, 1015 (5th Cir. 2015)*; and Cellular Sales of Missouri, LLC v. NLRB*, 824 F.3d 772 (8th Cir. 2016).

Members and performed and exchanged detailed damages calculations. In addition to disagreeing on whether additional overtime was owed under the FLSA, and the procedural mechanism under which the case could be litigated (individual vs. class/collective), the Parties also disagreed regarding the appropriate formula for calculating damages in the event that Plaintiffs prevailed on liability. CIS also asserted that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiff would only be able to recover under a two-year FLSA statute of limitations. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). Ultimately, the Settlement reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the substantial and numerous risks that Plaintiffs would face if the case proceeded in litigation.

Both Parties' counsel have significant experience in litigating similar claims involving pipeline inspectors alleged to be paid pursuant to a day rate system without overtime compensation.[7] As such, counsel for both sides were aware of and able to agree on the key issues early on to reach a fair and reasonable settlement.

Given the significant recovery as well as CIS's agreement for the Settlement to proceed as a class wide benefit for settlement purposes only, the Settlement provides substantial benefits to the Class Members and strongly outweighs the time and expense that it would take to continue to litigate this case through judgment and appeals, as well as the material risks that CIS would prevail

---

[7] *See, e.g.*, *Lopez v. T/J Inspection, Inc.*, No. 5:16-cv-148-M (W.D. Okla.) (final approval of settlement class represented by Class Counsel here); *Lopez v. STS Consulting Servs., LLC*, No. 6:16-cv-00246 (E.D. Tex.) (conditional certification of class of day rate pipeline inspectors represented by Class Counsel here); *Oates, et al. v. Quality Integrated Servs., Inc.*, No. 4:15-cv-01727 (S.D. Tex) (settlement obtained by Class Counsel here now pending); *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-00259 (W.D. Pa.) (settled by Class Counsel and defense counsel in this litigation); *Fenley v. Wood Grp. Mustang, Inc.*, No. 2:15-cv-00326 (S.D. Ohio) (conditional certification of class of day rate pipeline inspectors represented by Class Counsel here); *McGeary v. N. Amer. Pipeline Inspection, LLC*, No. 2:14-cv-992 (W.D. Pa.) (settled by Class Counsel here).

on the merits or with compelling this case to arbitration with a class and collective action waiver.

## 2.       The Proposed Settlement Is Fair And Reasonable

Because the Tenth Circuit Court of Appeals has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See Baker*, 2014 WL 700096, at *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors are: 1) whether the parties fairly and honestly negotiated the settlement; 2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; 3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and 4) the judgment of the parties that the settlement is fair and reasonable. *Baker*, 2014 WL 700096, at *2.  Once the settlement is found to be fair and reasonable, the Court also determines whether the agreement furthers the purpose of the FLSA. *See Solis*, 2014 WL 4357486, at *3 ("To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."); *Swartz*, 2016 WL 633872 at *4; *Baker*, 2014 WL 700096, at *2.

Here, the Gross Settlement Amount provides Class Members with the recovery of alleged unpaid overtime hours worked, and it was carefully negotiated based on factual discovery, a substantial investigation by Class Counsel, and the review and analysis of documents, information and payroll data produced by CIS prior to mediation. *See* Carson Decl. ¶ 11. The Gross Settlement Amount is based on an analysis of workweeks that the Class Members worked for CIS during the relevant time period, as determined by CIS's payroll records. *Id.* at ¶ 12. The Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiffs' calculated potential exposure. *Id.* at ¶ 13. In addition, the Gross Settlement Amount

takes into account the fact that CIS asserted that its inspectors were exempt from overtime obligations under the FLSA and that the arbitration agreements that Class Members signed would very possibly preclude them from proceeding in this case on a class or collective basis. By contrast, if the Settlement is approved, all Class Members will promptly receive a Settlement Award and Class Members will only release their claims if they sign a Claim Form and/or cash their check.[8] *Id.* at ¶ 14. Defendant will not receive a release from Class Members who do not deposit and/or cash their settlement checks by the 180-day cashing deadline, ***meaning that each Class Members is effectively given their own personal choice to participate in this Settlement or not***, by cashing their check. Agreement ¶ 13.

The proposed allocation formula is also fair and reasonable and should be approved. *See Lucas*, 234 F.R.D. at 695 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 429–30 (S.D.N.Y.2001) (citations omitted)); *see also Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in

---

[8] Such releases through the signing, depositing and/or cashing of settlement checks are appropriate and have been approved in other courts. *See Leverage v. Traeger Pellet Grills, LLC*, No. 16-cv-00784-KAW, 2017 WL 2797811 (N.D. Cal. June 28, 2017) (preliminarily approving the release mechanism of claims by class members through the cashing of the settlement checks); *Riedel v. Acqua Ancien Bath New York LLC*, No. 14 Civ. 7238 (JCF), 2016 WL 3144375 (S.D.N.Y. May 19, 2016) (same); *Nur v. Tatitlek Support Servs., Inc.*, No. 15-CV-00094 SVW (JPRx), 2016 WL 3039573, at *5-6 (C.D. Cal. Apr. 25, 2016) (same); *Mills v. Capital One, N.A.*, No. 14 Civ.1937(HBP), 2015 WL 5730008, at *19 (S.D.N.Y. Sept. 30, 2015) (same); *Lazarin v. Pro Unlimited Inc.*, No. C11–03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) (approving hybrid class action/FLSA settlement where class members release their claims under the FLSA by cashing their settlement checks); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012) (same).

light of that information.") (citations omitted). Under the proposed allocation formula, each Class Member will receive settlement shares for each workweek. This formula is similar to those found to be fair and reasonable in similar cases, and warrants approval.[9]

Where, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the Class Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See Pliego*, 313 F.R.D. at 130-131 ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation."). Here, as is amply demonstrated by the procedural history to date, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

The Settlement is the result of contested litigation, factual discovery, and arm's-length negotiations. Carson Decl. ¶¶ 6-8. It was reached only after the Parties exchanged substantial settlement-related discovery and conducted a full-day, in-person mediation session in Chicago, Illinois, followed by months of additional negotiations. *Id.* As described above, Class Counsel extensively investigated the applicable law, and applied it to the relevant facts, taking into account the potential defenses. *Id.* at ¶¶ 7, 9.

Class Counsel are experienced and respected class action litigators. *Id.* at ¶¶ 2-4, Ex. A. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believes this Settlement will provide a substantial benefit to the Settlement Classes. *Id.* at ¶ 9. In summary, the

---

[9] *See, e.g., Lopez v. T/J Inspection, Inc.*, No. 5:16-cv-148-M (W.D. Okla. Apr. 12, 2017) (Dkt. No. 59) approving a day rate overtime settlement with an allocation formula based on workweeks); *Fenley v. Applied Consultants, Inc.*, No. 2:15-CV-00259-MRH (W.D. Pa. June 17, 2016) (Dkt. No. 65) same); *McGeary v. North Am. Pipeline Insp., LLC*, No. 2:14-cv-992-JFC (W.D. Pa. Dec. 22, 2014) (Dkt. No. 97) (same).

proposed Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties.

### C.   The Service Awards Are Justified And Should Be Approved

Pursuant to the Settlement Agreement, CIS has agreed to pay Plaintiffs Gundrum and King each a service award in the amount of Twenty Thousand Dollars ($20,000.00) for their efforts in bringing and prosecuting this matter, and in addition, for their broader general releases against CIS (which both named Plaintiffs have agreed to). *See* Agreement ¶ 7. CIS has also agreed to pay Opt-In Plaintiffs Donnie Hood, Eric Malone, Christopher Teague, Erasmo Enriquez, and Jacob Carlson Two Thousand Five Hundred Dollars ($2,500.00) each for providing significant information, including executed declarations to Class Counsel. Subject to Court approval, this amount will be paid to each in addition to their recovery of unpaid overtime for the time when they worked for CIS.  Agreement ¶ 3.

Courts routinely approve incentive awards to compensate named plaintiffs for "personal risk incurred or additional effort and expertise provided for the benefit of the class." *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009). It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Young v. Tri Cnty. Sec. Agency, Inc.*, No. 13-cv-5971, 2014 WL 1806881, at *1, 8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of employment and made significant contributions to the litigation).

Here, Plaintiffs worked with Class Counsel, providing background information about their employment, about CIS's policies and practices, and about the allegations in this lawsuit, discussed case strategy, assisted in ensuring the settlement was fair to the Class Members, and

Plaintiff Gundrum was interviewed by the NLRB. Carson Decl. ¶ 18.  Plaintiffs are also providing a broader release of claims to CIS. The five additional Opt-In Plaintiffs also provided significant assistance to Class Counsel in preparing for the mediation, and each executed declarations in support of Plaintiffs' claims. *Id.* at ¶ 21.

In addition, the proposed additional payments are justified by the benefits that Plaintiffs have brought to the Class Members, given the severe consequences they have faced. Plaintiffs took the significant risk of representing the interests of their fellow employees, including risking their reputation in the community and in their field of employment to participate in this case on behalf of the Class. *Id.* at ¶ 18. This concern is especially significant in this industry, and the two Named Plaintiffs have reported that they have not been able to find any work in the industry since filing this lawsuit, where hiring is based largely on word of mouth and reputation. *Id.* at ¶ 19 Plaintiffs have submitted declarations in support that set forth these additional issues. *See* Declaration of Eric Gundrum and Michael King (attached as Exhibits 3 and 4, respectively).  The consequences that Plaintiffs believe they have faced as a result of their participation in this lawsuit so that they could bring this benefit to the Class strongly support the additional payments to them. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.")[10]

---

[10] *See also Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions in the Tenth Circuit. *See, e.g.*, *Tuten*, 41 F. Supp. 3d at 1010 (approving service award of $15,000 to the named plaintiff); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *16 (W.D. Okla. Oct. 27, 2008) (approving service award of $15,000 to the named plaintiff); *see also Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (granting service awards of $20,000, $15,000 and $7,500 to named plaintiffs); *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving service award of $15,000 to named plaintiff as he "took [ ] risks for what would only be at most a couple thousand dollar recovery if he were to be treated the same as all the unnamed class members."); *see also Karic v. Major Auto. Co., Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (approving $20,000 service award to each of the seven named plaintiffs); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06–3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case).

For these reasons, the service award payments of $20,000.00 each to Plaintiffs Gundrum and King and $2,500 each to the five Opt-In Plaintiffs should be approved as fair and reasonable.

### D.     The Proposed Settlement Furthers The Purpose Of The FLSA

Finally, the Settlement Agreement contains no provisions that are contrary to the purposes of the FLSA or that would frustrate the implementation of the FLSA in the workplace. For example, the parties are not keeping the Settlement Agreement a secret. *See, e.g., Alewel v. Dex One Serv., Inc.*, No. 13–2312–SAC, 2013 WL 6858504, at *2 (D. Kan. Dec. 30, 2013) ("the public's interest in understanding disputes and trusting courts as fairly and honestly run outweighs any interest of the parties in keeping confidential the amount of settlement.") (quoting *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2011 WL 3518172, at *1-2 (D. Kan. Aug. 11, 2011))

(internal quotations omitted); *McCaffrey v. Mortg. Sources, Corp.*, No. 08–2660–KHV, 2010 WL 4024065 at *2 (D. Kan. Oct. 13, 2010) (the Court not allowing the parties to file the settlement under seal as the public interest in understanding the disputes and ensuring the Courts are honest and transparent outweighs the parties' interest in keeping the settlement confidential).

The Settlement also furthers the purposes of the FLSA by providing Class Members with substantial recovery for their alleged unpaid overtime, that they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all Class Members will automatically receive a Settlement Award unless they exclude themselves from the settlement, and will not release any claims unless they cash their check (thereby allowing each Class Member to decide whether to participate in the Settlement or not). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

## E. The Court Should Preliminarily Certify The Rule 23 Settlement Class Under Fed. R. Civ. P. 23

In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Pliego*, 313 F.R.D. at 125. A case may be certified as a class action under Rule 23 when:

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative Parties are typical of the claims or defenses of the class; and
(4)     the representative Parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Pliego*, 313 F.R.D. at 125. These four threshold requirements are commonly

referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See Trevizo v. Adams*, 455 F.3d 1155, 1161-62 (10th Cir. 2006).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class. *Pliego*, 313 F.R.D. at 125. The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997).

Here, Plaintiffs move for preliminary or *provisional* certification of the Class under Fed. R. Civ. P. 23(b)(3), and requests that the Court provisionally find that all of the requirements for class certification are satisfied for settlement purposes only. Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 with respect to the Class Members have been and are met. *See* Agreement ¶ 11.

### 1.    The Class Is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class must be so numerous that joinder of all members would be 'impracticable.'" *Pliego*, 313 F.R.D. at 125. "The Tenth Circuit has stated that there is 'no set formula' to determine whether the numerosity requirement is met; instead, it is a fact-specific inquiry best left to the district court's discretion." *Gonzales v. City of Albuquerque*, No. CIV 09-0520, 2010 WL 4053947, at *7 (D.N.M. 2010); *see also In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1221 (D.N.M. 2012); *Gianzero*

*v. Wal–Mart Stores, Inc.*, No. 09–cv–00656–REB–BNB, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010) ("There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical."). The proposed Settlement Class here easily meets the numerosity requirement because approximately 2,300 Class Members have been identified through Defendant's payroll records.

### 2.      The Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied where there are questions of law or fact common to the class. *See Pliego*, 313 F.R.D. at 126 (quoting *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010)). Class members must "possess the same interest and suffer the same injury." *Pliego*, 313 F.R.D. at 126 (quoting *Trevizo*, 455 F.3d at 1163). Here, Plaintiffs and the Class Members' claims each arise from Defendant's common pay policies. The alleged common issues include, for example: (1) whether Class Members were entitled to overtime compensation for their hours worked; (2) whether Class Members were similarly denied compensation for all hours worked; and (3) whether Defendant's policy of failing to pay any overtime compensation to Class Members violated the FLSA and state wage and hour laws. These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all members of the proposed Classes, are sufficient to satisfy the commonality requirement.

### 3.      The Claims Of The Named Plaintiffs Are Typical Of Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiffs' claims are reasonably coextensive with those of absent Class Members, and because the claims arise from a single course of conduct by Defendant and a single set of legal theories. *See Devaughn*, 594 F.3d at 1198; *Pliego*, 313 F.R.D. at 126 (quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)). Plaintiffs' claims for

unpaid overtime compensation during weeks when they worked as a Class Member are typical of the claims of the Class.

**4.      Class Counsel And Plaintiffs Meet The Adequacy Requirements Of The Class**

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), a named plaintiff must show "(1) [ ] the named plaintiff and her counsel [does not] have any conflicts of interest with other class members, and (2) [ ] the named plaintiff and her counsel [will] prosecute the action vigorously on behalf of the class." *Pliego*, 313 F.R.D. at 126 (citing *Rutter & Wilbanks*, 314 F.3d at 1187–1188). The adequacy of representation requirement is met here because Plaintiffs have the same interests as the Class Members. There is no conflict between Plaintiffs and the Class in this case, and Plaintiffs' claims are in line with the claims of the class. Plaintiffs have and will continue to aggressively and competently assert the interests of the Class, and Class Counsel is skilled and experienced in wage and hour class action litigation.  *See* Carson Decl. ¶¶ 2-4, 22.

**5.      The Class Satisfies The Predominance And Superiority Requirements of Fed. R. Civ. P. 23(b)(3)**

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Pliego*, 313 F.R.D. at 127; *In re Thornburg*, 912 F. Supp. 2d at 1224-25. For the reasons discussed above, the Settlement Class easily satisfies the predominance requirement. In addition, allowing the Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis.

Accordingly, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class for settlement purposes only.

### 6.   The Multi-State Rule 23 Settlement Class Based On Common Law Is Appropriate For Class Certification

The multi-state Rule 23 Settlement Class based on common law is appropriate for class certification. The Settlement Cass is premised on the unjust enrichment claims in Plaintiffs' FAC. Courts have certified multi-state Rule 23 classes. "When a class action raises common issues of conduct that would establish liability under a number of states' laws, it is possible for those common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004) (citing *In re Buspirone*, 185 F.Supp.2d 363, 377 (S.D.N.Y. 2002)); *In re LILCO Secs. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y.1986) ("The spectre of having to apply different substantive law does not warrant refusing to certify a class on . . . common law claims.").[11]

Such actions rest on the equitable principle that "[a] person who is unjustly enriched at the expense of another is required to make restitution to the other." Restatement (Third) of Restitution and Unjust Enrichment § 1. Consistent with this principle, claims for unjust enrichment share a core of common elements: 1) the plaintiff conferred a benefit upon the defendant; 2) the defendant appreciated or knew of the benefit; and 3) the defendant accepted or retained the benefit under such circumstances as to make non-payment inequitable.[12] Moreover, as far as differences between

---

[11] In *Fenley v. Applied Consultants, Inc.*, the parties settled FLSA and Rule 23 class claims, which included multi-state common law unjust enrichment claims, on behalf of day rate inspectors. No. 2:15-cv-00259-MRH (Dkt. No. 43-1.) On February 29, 2016, the U.S. District Court for the Western District of Pennsylvania granted preliminary approval of the settlement, and final approval on June 16, 2016, and in doing so certified the unjust enrichment class for settlement purposes. (Dkt. Nos. 51, 65.)

[12] *See Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) (finding the predominance requirement is met under common law issues of the Rule 23 multistate unjust

state laws impact only on case management, these differences are irrelevant to certification of a

settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

class certification, a district court need not inquire whether the case, if tried, would present

intractable management problems . . . for the proposal is that there be no trial.").

    **F.**    **The Proposed Notice, Reminder Letter, And Reminder Script Provide Adequate Notice To The Class Members And Satisfy Due Process**

The Supreme Court has held that notice of a class action settlement must be "reasonably

calculated, under all the circumstances, to apprise interested Parties of the pendency of the action

and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 314 (1950); *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270,

2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option

Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class

Members of all material elements of the Litigation and the Agreement"); *Bozak v. FedEx Ground*

---

enrichment class); *Powers v. Lycoming Engines,* 245 F.R.D. 226, 231 (E.D. Pa. 2007) (the differences between states has posed little barrier to the certification of multi-state unjust enrichment class actions), *rev'd on other grounds*, 2009 WL 826842, 328 Fed. Appx. 121 (3d Cir. 2009); *In Re Abbott Labs. Norvir Anti–Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *8 (N.D. Cal. 2007) (concluding that variations among states' unjust enrichment laws "do not significantly alter the central issue or the manner of proof" where the defendant allegedly unjustly acquired additional revenue by virtue of an anti-competitive premium on the price of the acquired company); *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230–31 (D. Mass. 2006) (certifying multi-state defendant subclasses under the consumer protection laws of forty-one states); *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 n. 40 (S.D. Fla. 2004) (unjust enrichment claims in different states are substantially similar) (citing *Singer v. AT & T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998)); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) (noting that the "universal thread throughout all common law causes of action for unjust enrichment" is a "focus on the gains of the defendants, not the losses of the plaintiffs"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278-280 (D. Mass. 2004) (certifying a multistate settlement class based on an unjust enrichment claim); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 518 (E.D. Mich. 2003) (characterizing the standards of unjust enrichment around the country as "virtually identical"); *see also Kingsberry v. Chicago Title Ins. Co.*, 258 F.R.D. 668, 669-670 (W.D. Wash. 2009) (finding Plaintiff's common law claims of unjust enrichment are questions of law common to class).

*Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class"). Here, the proposed Notice and manner of distribution negotiated by the Parties is "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B), and related FLSA case law. All Class Members have been identified in a class list prepared by CIS, and the Notice will be mailed to the last known address *and* email address of each Class Member (and to those addresses that the Settlement Administrator is able to find using reasonable investigatory methods).

The proposed Notice attached to the Settlement Agreement as Exhibit A is clear and straightforward, and provides information on the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Class Members, including the allocation method, the scope of the release, the request for attorneys' fees and costs, the deadline for submitting Claim Forms, and their right to object or opt out of the Settlement. *See* Agreement, Ex. A. Further, the Agreement provides that the Administrator shall send a reminder notice by mail and email to Class Members thirty (30) days before the end of the Claim Period. *See* Agreement ¶ 8, Ex. C (Reminder Notice).

Accordingly, the Notice complies with the standards of fairness, completeness and neutrality required of a notice disseminated under authority of the Court, and should be approved.

## G. The Proposed Implementation Schedule

Plaintiffs respectfully request that the Court approve the following proposed implementation schedule:

| Mailing of Notice | Within fifteen (15) business days after the Court preliminarily approves the Settlement Agreement |
| Plaintiffs' Motion for Attorneys' Fees and Costs | Forty-Five (45) days after the initial mailing of the Notice of the Settlement |
| Deadline to submit claim forms, objections or requests for exclusion | Sixty (60) days after the initial mailing of the Notice of the Settlement |
| Plaintiffs' Motion for Final Approval | Five (5) business days prior to Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, approximately 100 days after Preliminary Approval |

## V.     <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Preliminary Approval of the Settlement Agreement, and enter the accompanying proposed Preliminary Approval Order.

Dated:  July 10, 2017

Respectfully submitted,

BERGER & MONTAGUE, P.C.

/s/ Shanon J. Carson
Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Steven T. Horton, OBA No. 14589
HORTON LAW FIRM
114 N.W. 6th Street, Suite 201
Oklahoma City, Oklahoma 73102
Telephone: (405) 606-8080
Facsimile: (405) 606-8088
shorton@coxinet.net

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

filed on the ECF docket and is available for viewing and download on this 10th day of July, 2017.

/s/ Shanon J. Carson
Shanon J. Carson