UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC GUNDRUM and MICHAEL KING, individually and on behalf of all persons similarly situated,  )<br>)<br>)<br>) | |
| **Plaintiffs,**  )<br>) | |
| v.  ) | Case No. 17-CV-55-TCK-tlw |
| )<br>CLEVELAND INTEGRITY  )<br>SERVICES, INC.,  )<br>) | |
| **Defendant.** | |

**OPINION AND ORDER**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement (Doc. 89) and Memorandum of Law in support of Plaintiffs' Unopposed Motion (Doc. 90).

**I.   Background**

**A.   Factual and Procedural Background**

Plaintiffs Eric Gundrum and Michael King worked as pipeline inspectors for Defendant Cleveland Integrity Services, Inc. ("CIS") for various periods between 2013 and 2015. Plaintiffs describe themselves as blue-collar workers and allege that their work primarily entails manual duties. CIS paid them a specific amount per day that they worked. Plaintiffs allege that they routinely worked more than forty hours per week but that CIS did not pay them overtime compensation for hours worked over forty per week. Plaintiffs brought a putative collective action against CIS under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), on behalf of themselves and others similarly situated in the United States District Court for the Western District of Wisconsin. The parties briefed several issues before the case was transferred to this Court. Subsequently, the parties agreed to participate in an Alternative Dispute Resolution ("ADR")

process, during which they exchanged settlement-related discovery, engaged in settlement negotiations, and participated in an in-person mediation session with retired United States District Judge Wayne R. Andersen. After further negotiations, the parties agreed to settlement terms on behalf of a proposed settlement class under Federal Rule of Civil Procedure 23 ("Rule 23") based on state law claims of unjust enrichment.[1]

As set forth in Plaintiffs' Unopposed Motion, the parties seek the following forms of relief: (1) preliminary approval of the Settlement Agreement (Doc. 90-2); (2) preliminary certification of a Rule 23 class for settlement purposes, based on state law claims of unjust enrichment; (3) preliminary approval of Plaintiffs Eric Gundrum ("Gundrum") and Michael King ("King") as the representatives of the settlement class; (4) preliminary approval of Berger & Montague, P.C., as Class Counsel for the settlement class; (5) preliminary approval of Dahl Administration, LLC as Settlement Administrator and the costs of claims administration; (6) approval of the Class Notice and Claim Form attached to the parties' Settlement Agreement; and (7) approval of the proposed schedule and procedure for completing the process for final approval of a class-wide settlement.

**B.      Terms of the Proposed Settlement Agreement**

The proposed class includes approximately 2,300 individuals and is defined as follows:

> All employees who worked for CIS in the job title of inspector and who were paid on a daily rate basis in any workweeks between January 1, 2015 and March 31, 2017, except for individuals who held only jobs containing the word "Chief."

(Agreement ¶ 1) (hereinafter the "Class Members").

---

[1] Plaintiffs have filed a First Amended Complaint (Doc. 86) in connection with the parties' proposed Settlement Agreement (Doc. 90-2). The First Amended Complaint newly alleges unjust enrichment claims on behalf of the proposed Rule 23 class members. Defendant stipulates to the filing of the First Amended Complaint in connection with the Settlement Agreement.

Under the Settlement Agreement, CIS will provide the Settlement Administrator with a list of all Class Members and their last known addresses, telephone numbers, email addresses, and social security numbers. If the Settlement Agreement is preliminarily approved, the Settlement Administrator will run the list of Class Members through the U.S. Postal Service's national change of address database and mail and email the Class Notice and Claim Form to the Class Members. Class Members will then have sixty days to submit a Claim Form, opt out of the settlement, or object to the settlement. The Settlement Administrator will send a reminder notice by mail and email thirty days before the end of the claim period.

The Settlement Agreement includes a Gross Settlement Amount ("GSA") of $4,500,000 to be paid by CIS. In addition to compensation to the Class Members, the GSA is to cover (1) service awards of $20,000 to each of the two named Plaintiffs; (2) service awards of $2,500 to each of five individuals who have consented in writing to participate as plaintiffs in this case ("Opt-In Plaintiffs"); (3) attorneys' fees of up to one-third of the GSA; (4) reimbursement of costs to Class Counsel, anticipated not to exceed $25,000; (5) payment for the Settlement Administrator's services; and (6) CIS's share of payroll taxes applicable to any amount of the funds attributable to wages. The balance of the GSA is the Net Settlement Amount and will be distributed to Class Members who do not opt out of the settlement. Each Class Member will receive a minimum settlement payment of between $350 and $600, depending on the percentage of eligible Class Members who return claim forms. Class Members who submit timely claim forms will also receive shares of the Net Settlement Amount corresponding to the number of weeks worked in a qualifying position for CIS during the relevant time period and ultimately receive a payment based on the number of shares. Class Members who do not submit a Claim Form or opt out will receive only the minimum settlement payment. All settlement payments are allocated 40% as back wages subject to withholding taxes

and reported on a W-2, and 60% as non-wage interest and/or damages or liquidated damages and not subject to withholding taxes. Settlement checks will be negotiable for 180 days from the date they are issued. The Settlement Administrator will mail and email a reminder to any Class Member who has not cashed his or her check after 90 days and will call those who have not cashed their checks when less than forty-five days of the 180-day window remain. The Settlement Administrator will maintain copies of all negotiated checks and will file a declaration with the Court listing the names of all Class Members who signed and deposited or cashed settlement checks. The amount of any uncashed settlement checks will be remitted by the Settlement Administrator to CIS in recognition that CIS will not receive any release of claims from those class members.

The settlement checks (regardless of whether they returned a Claim Form), Class Members will include the following endorsement:

> By signing, depositing, and/or cashing this check, I hereby consent to opt-in to the collective action in Gundrum v. Cleveland Integrity Services, Inc., No. 4:17-cv-00055-TCK-TLW (N.D. Ok.) as a party plaintiff pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA") and agree to release Cleveland Integrity Services, Inc. ("CIS") and all Released Parties from all claims, both known and unknown, that arise out of my employment with CIS under the FLSA, state statutory law (excluding workers' compensation laws, unemployment compensation laws, and discrimination laws), or common law (*e.g.*, unjust enrichment, quantum meruit, *etc.*) concerning my compensation, hours of work, pay for those hours of work, or CIS's payroll practices through [the date of the Court's Preliminary Approval Order].

(Settlement Agreement ¶ 11.) The release applies to CIS and its past and present parent companies, investors in any of those companies, owners, controlling persons, subsidiaries, affiliates, shareholders, directors, officers, employees, insurers, reinsurers, attorneys and agents (collectively, the "Released Parties"). The named Plaintiffs and Opt-In Plaintiffs will also provide a general release to the Released Parties in consideration for their enhanced service awards.

**II.     Jurisdiction**

Although the parties have not raised whether the Court has supplemental jurisdiction over their state law claims, other courts have examined whether supplemental jurisdiction is appropriate before proceeding with a proposed settlement class involving the release of FLSA and state law claims. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016). As in other cases in district courts within the Tenth Circuit, the Court finds that the exercise of supplemental jurisdiction is appropriate because the allegations underlying Plaintiffs' unjust enrichment claims essentially duplicate those underlying their FLSA claims, and separate proceedings would not serve the interests of judicial economy, convenience, and fairness. *See id.* (collecting cases).

**III.    Motion for Preliminary Approval of the Settlement Agreement**

To determine whether the Settlement Agreement should be preliminarily approved, the Court must determine whether it satisfies requirements under both the FLSA and Rule 23.[2]

---

[2] Section 216(b) of the FLSA permits a form of collective action to satisfy FLSA claims, which typically requires that an employee affirmatively "opt in." *See* 29 U.S.C. § 216(b) (stating that an employee may bring a claim on behalf of other similarly situated employees, but "[n]o employee shall become a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"). However, in this case, the parties seek certification of a settlement class under Rule 23, rather than an "opt-in" collective action under the FLSA. According to the Settlement Agreement, CIS contends that if the case were litigated it would not qualify for certification as a collective action under FLSA or as a Rule 23 class. However, for settlement purposes only, CIS stipulates to the certification of a multi-state Rule 23 settlement class premised on unjust enrichment claims. (Settlement Agreement ¶ 1.) A relatively recent trend in FLSA litigation involves "hybrid" classes asserting state law claims on behalf of a Rule 23 class as well as an overlapping FLSA collective action. *See Kuncl v. Int'l Bus. Machines Corp.*, 660 F. Supp. 2d 1246, 1250 (N.D. Okla. 2009). While some courts have raised concerns about hybrid FLSA collective actions, courts within the Tenth Circuit have generally approved class settlements involving hybrid classes. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 717, 125 (D. Colo. 2016). *But see Kuncl* (noting reservations about Rule 23/FLSA hybrid actions but holding that judgment in a hybrid action precludes later claims of individual who failed to opt out of class action and failed to opt in to FLSA action).

Here, the Settlement Agreement provides two mechanisms to ensure that Class Members do not release their claims involuntarily: first, upon receipt of the Class Notice, Class Members will

A.      **Preliminary Approval of FLSA Settlement**

1.      **Standard**

The Court must scrutinize an agreement to settle FLSA claims to ensure that (1) the litigation involves a bona fide dispute and (2) the proposed settlement is fair and equitable to all parties concerned and does not frustrate the purpose of the FLSA. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982). The Court also must determine whether the proposed settlement contains a reasonable award of attorneys' fees. *See Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 1920292, at *4 (D. Kan. Aug. 18, 2015).

2.      **Analysis**

a.      **Bona fide dispute**

The Court finds substantial indicia of a bona fide dispute are present. Plaintiffs brought suit under the FLSA for back wages and are represented by attorneys experienced in litigating FLSA claims, which suggests "the settlement is more likely to reflect a reasonable compromise of disputed issues." *See Lynn's Foods*, 679 F.2d at 1354. Plaintiffs contend CIS's practice of paying its pipeline inspectors a day rate without paying overtime compensation violates the FLSA and contend they have strong arguments for conditional certification of a collective action and Rule 23 class. CIS argues that its compensation practices complied with the FLSA and asserts several defenses that it contends would partially or entirely defeat Plaintiffs' claims. Specifically, CIS asserts the following defenses: (1) CIS's compensation practices satisfy the salary basis test under the FLSA and therefore CIS owed no overtime to Plaintiffs; (2) Plaintiffs' jobs fall within the administrative exemption; and

---

have an opportunity to either opt out or submit a claim form to increase their potential settlement award; and second, Class Members who did not submit a timely claim form will receive a minimum payment as set forth in the Settlement Agreement but will not release any claims unless they sign and deposit or cash the check. (Settlement Agreement ¶ 11 (setting forth language of limited endorsement granting consent to opt-in to settlement and release claims, to be included on each settlement check).) Accordingly, the Settlement Agreement provides a safety mechanism to ensure that Class Members do not release their claims unknowingly.

(3) the arbitration agreements signed by Plaintiffs and the Class Members prevent them from asserting their overtime claims in a class or collective action. The parties' positions on these issues indicate that a bona fide dispute exists between the parties, each of which faces substantial risk if the litigation were to proceed.

### b. Fair and equitable to all parties; furthers the purpose of FLSA

According to Plaintiffs' unopposed motion and the representations of counsel, the negotiated settlement compensates class members for alleged unpaid overtime hours worked and was reached after extensive investigation and analysis of information exchanged between the parties. The parties participated in a full-day, in-person mediation session with retired U.S. District Judge Wayne R. Andersen. In preparation for their ADR effort, the parties exchanged relevant discovery, including a database produced by CIS containing the compensation received and number of days worked by all potential Class Members, and a detailed damage analysis produced by Plaintiffs. In addition, the parties exchanged mediation briefs detailing their legal and factual arguments. Following the mediation session with Judge Andersen, the parties engaged in further settlement negotiations, resulting in the Settlement Agreement.

In the course of negotiations, the parties exchanged detailed damages calculations and overcame several key disagreements including the appropriate formula for calculating any potential damages and whether any violation was a "knowing" violation, which affects the applicable time period for which Plaintiffs and Class Members may recover. The Settlement Agreement provides substantial benefits to Class Members and suggests a reasonable compromise was made given the risks to both sides. Plaintiffs represent that "[t]he Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiffs' calculated potential exposure." (Pls.' Mot. 18.; Carson Decl. ¶ 13.) The settlement agreement provides Class Members who choose to participate with financial recovery in a relatively short time frame compared to the

7

expected time for litigation and the risk of reduced or no recovery. The negotiation efforts discussed above and the experience of Plaintiffs' counsel representing FLSA plaintiffs provide the Court with additional assurances regarding the fairness and equity of the agreement.

The service awards of $20,000 each to be paid to Plaintiffs Gundrum and King, are substantially higher than service awards in many other FLSA settlements. However, Gundrum and King have agreed to grant broader general releases to CIS in addition to releasing their claims under the FLSA. Plaintiffs have cited several other cases in which named plaintiffs received service awards of $15,000 to $20,000. Plaintiffs' motion details the efforts Plaintiffs have made to assist class counsel in this litigation and the personal risk incurred as to their employment prospects by participating as representatives in this case. Gundrum and King represent that they have been unable to find work in the pipeline inspection industry, in which Plaintiffs believe hiring is largely based on word of mouth and reputation. Therefore, Plaintiffs have demonstrated that they undertook personal risks by representing the proposed collective class in this case. Accordingly, the service awards appear to fall within reasonable bounds.

### c.     Reasonableness of Attorneys' Fees

The Settlement Agreement provides that "[s]ubject to the Court's approval, Class Counsel shall receive one-third of the Gross Settlement Amount as attorney's fees." (Settlement Agreement ¶ 14.) While the resulting proposed fee of $1,500,000 strikes the Court as high for an FLSA settlement, the Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements. *See Pliego*, 313 F.R.D. at 122; *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *15 (W.D. Okla. Oct. 27, 2008) (discussing contingent fee rates). Class Counsel has provided a declaration and information documenting its efforts litigating this case, negotiating the Settlement Agreement, and supporting

its experience and skill in wage and hour class action litigation. At the final approval stage, the Court will make a final determination of the reasonableness of Class Counsel's proposed fee. *See Barbosa*, 2015 WL 4920292, at *7 (noting that courts in the Tenth Circuit employ a hybrid approach to determine the reasonableness of attorney fee awards, combining the percentage fee with a lodestar, and have discretion to reduce an award of attorneys' fees if found unreasonable under the lodestar approach). Therefore, the Court finds that the proposed attorneys' fees in the Settlement Agreement satisfy the requirements for preliminary approval.

### d. Conclusion

Based on the factors discussed above, for the purpose of preliminary approval of the settlement of FLSA claims, the Court finds the Settlement Agreement is fair, reasonable, and adequate.

## B. Provisional Certification of Rule 23 Settlement Class

### 1. Standard

Preliminary approval of a class settlement requires the Court to assess (1) whether the matter is suitable for certification as a class action under Rule 23 and (2) "the overall fairness of the proposed settlement . . . [and] the adequacy of the notice the parties propose to send out." *McNeely,* No. CIV-07-933-M, 2008 WL 4816510, at *2. The objective of the court's inquiry at the preliminary approval stage is to determine whether to direct notice of the proposed settlement to class members, permit the opportunity for objections, and schedule a fairness hearing. *See Tripp v. Rabin*, No. 14-CV-2646-DDC-GEB, 2016 WL 3615572, at *2 (D. Kan. July 6, 2016); NEWBERG ON CLASS ACTIONS § 13.10.[3]

---

[3] After Class Members have received the Class Notice and the window for objections has closed, the Court holds a fairness hearing to determine whether the class settlement should be

The requirements of Rule 23(a) and (b) apply equally to a proposed settlement class as to a litigation class. *See Pliego*, 313 F.R.D. at 125. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four prerequisites to a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 828 n.6 (1999). Each subclass must meet all four prerequisites. *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co.*, 511 F.2d 1073, 1077 (10th Cir. 1975). In addition to the prerequisites of Rule 23(a), the Plaintiffs must also satisfy the requirements of Rule 23(b), which defines the categories of maintainable class actions. Plaintiffs allege that the third category applies to this action. Under that category,

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

When presented with a proposed settlement-only class, the court "need not inquire whether the case, if tried, would present intractable management problems, see [Rule] 23(b)(3)(D), for the

---

approved. At the final approval stage, the factors to be considered to assess fairness include "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of a immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Tripp*, 2016 WL 3615572, at *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

10

proposal is that there be no trial," *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997), but the court must apply "undiluted, even heightened attention" with respect to other aspects of Rule 23 – "those designed to protect absentees by blocking unwarranted or overbroad class definitions." *Id.* at 1261 (citing Rule 23(c)(1)). However, a "less stringent" standard applies at the first, preliminary approval stage compared to that at final approval. *Tripp*, 2016 WL 3615572, at *2 (citing *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012)). Generally, preliminary approval may be granted "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." NEWBERG ON CLASS ACTIONS § 13:10.

### 2. Analysis – Requirements of Rule 23(a)

#### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Based on Plaintiffs' representation that CIS has identified more than 2,300 Class Members, the Court is satisfied that the joinder of all Class Members would be impracticable.

#### b. Commonality

The commonality requirement of Rule 23(a) requires only a single question of law or fact common to the class. *See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999). However, "[c]ommonality is not necessary on every issue raised in a class action. . . . In fact, 'Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation.'" *Realmonte v. Reeves*, 169 F.3d 1280, 1285 (10th Cir 1999) (citing *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). The proposed Rule 23 settlement class is based on claims of unjust enrichment arising out of CIS's alleged failure to pay overtime. Plaintiffs and the Class Members held the same job title, and their claims in this action arise out of CIS's alleged practice of paying pipeline inspectors according to a day rate. Several

defenses raised by CIS, for example whether the payment to inspectors satisfies the salary basis requirement, appear to have relevance across the class members. These common questions of fact and law satisfy the commonality requirement at this stage.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality standard does not require that every member of the class be in an identical situation as the named plaintiffs. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). However, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted). Although "the commonality and typicality requirements of Rule 23(a) tend to merge. . . . the typicality prong is a distinct requirement 'intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees.'" *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 643 n.7 (N.D. Okla. 2000) (citation omitted). Here, the Plaintiffs seek to represent Class Members who held the same job title and allegedly were not paid overtime compensation due to the employer's "day-rate" compensation practice. Plaintiffs' alleged dates of employment include time periods that fall within the range of the class definition. No conflict between the interests of Plaintiffs and Claim Members is apparent. The Plaintiffs' claims thus satisfy the typicality requirement at this stage.

### d. Adequate Representation

The final requirement of Rule 23(a) is adequacy of representation. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Rutter*, 314 F.3d at 1187-88 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs represent in their motion for approval that they have the same interests as Class Members and have no conflicts of interest with any Class Members. Plaintiffs state that they "have and will continue to aggressively and competently assert the interests of the Class." (Pls.' Mot. 27.) In consideration of Plaintiffs' history of prosecuting this case, as discussed *supra* Part III.A.2.b, the Court finds for purposes of preliminary certification that Plaintiffs meet the adequacy requirement of Rule 23(a)(4).

### 3. Analysis – Requirements of Rule 23(b)

Having found that Plaintiffs satisfy the requirements of Rule 23(a), the Court turns to the additional requirements set forth in Rule 23(b)(3): predominance of questions of law or fact common to class members over any questions affecting only individual members and superiority of a class action over other available methods for the fair and efficient adjudication of the controversy. The rule defines "matters pertinent" to the Court's findings to include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

For the reasons discussed *supra* Part III.B.2, it appears that the common questions of fact and law relating to Plaintiffs' and class members' overtime claims predominate over any individual questions. Furthermore, proceeding as a settlement class will almost certainly enable many more individuals to recover damages for their alleged overtime injury than would otherwise do so, and appears to be superior to the prospect of individual adjudication. Plaintiffs have not advised the Court of the existence of any other litigation already commenced by any Class Member. It appears

that the benefits to Class Members from proceeding as a class in this action outweigh the interests of Class Members in proceeding individually. In any event, under the procedure set forth in the Settlement Agreement, Class Members will have two opportunities to exclude themselves from the class settlement by timely opting out or declining to endorse their settlement checks. Accordingly, for the purposes of preliminary certification for settlement purposes, the Court finds that the class meets the predominance and superiority requirements of Rule 23(b)(3).

### 4. Adequacy of Notice to Class Members

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state" the categories of information set forth in Rule 23(c)(2)(B)(i)-(vii).

The Settlement Agreement sets forth a procedure for identifying and notifying Class Members of the proposed settlement, including processes by which the Settlement Administrator will verify addresses and send reminder notices to Class Members before the expiration of the claim period. CIS will provide the Settlement Administrator with with a list of all Class Members and their last known addresses, telephone numbers, and email addresses, and their social security numbers. The Settlement Administrator will send the Class Notice and Claim Form to each Class Member via U.S. mail and email. The Settlement Agreement further provides that the Settlement Administrator will use "reasonable devices" to obtain forwarding addresses and resend the notice materials to any such addresses.

The Class Notice is written in plain, easily understood language. The Class Notice explains the nature of the action and claims asserted and defines the class certified. It summarizes the terms of the settlement and the release of claims by Class Members who receive settlement payments. It

further explains the time and manner for requesting exclusion and indicates that individuals who opt out of the settlement will not be bound by the Settlement Agreement. However, absent from the Class Notice is any language informing Class Members of their right to enter an appearance through attorney if desired, which is required under Rule 23(c)(2)(b)(iv). Therefore, the proposed Class Notice is inadequate as drafted. The parties may amend the draft to address this deficiency and jointly submit it to the Court for approval.

### 5.     Conclusion – Rule 23 Provisional Certification

For the reasons discussed *supra* Part III.B, and subject to the amendment of the Class Notice to ensure that it informs Class Members of their right to enter an appearance through counsel, the Court finds sufficient reasons to conclude that the Settlement Agreement overall is fair and the proposed class should be preliminarily certified for settlement purposes.

## V.     Conclusion

The parties are granted leave to submit an amended Class Notice in conformance with this Order, accompanied by a renewed Motion for Preliminary Approval of the Settlement Agreement, no later than two weeks from the date of this Order. Rather than setting forth the same contents as the present motion, the renewed motion may incorporate the present motion by reference and attach the amended Class Notice.

IT IS SO ORDERED this 16th day of August, 2017.

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**